ADELA VACHIER, demandante y recurrente, *v.* McCORMICK, ALCAIDE & Co., demandada y recurrida.

*Número:* 318      *Resuelto:* 7 de diciembre de 1962

*Carlos D. Vázquez,* abogado de la recurrente; *Blanco Lugo &
Souss* y *Félix Ochoteco, Jr.,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del
Tribunal.

El Río Grande de Loíza es lindero común de los terrenos
pertenecientes a las partes que litigan la presente acción.
La demandante es ·dueña de una finca al sur del río.·
La demandada de una al norte. Con el correr de los años
y de las aguas, la acción erosiva de la corriente ha

variado el curso del río a expensas de los terrenos de la demandante. Este proceso ha venido desarrollándose paulatinamente desde el año 1914 y a la fecha en que se interpuso la demanda, 8 de agosto de 1958, la finca de la demandada había acrecentado su cabida en 7.40 cuerdas. Para reivindicar esa porción de terreno fue que la demandante inició el presente pleito.

El tribunal sentenciador declaró sin lugar la acción ejercitada amparándose en lo dispuesto en el Art. 302 del Código Civil, 31 L.P.R.A. sec. 1169. Establece dicho precepto que "[p]ertenece a los dueños de las heredades confinantes con las riberas de los ríos, el acrecentamiento que aquéllas reciben paulatinamente por el efecto de la corriente de las aguas". La recurrente sostiene que es errónea la aplicación de esa disposición. Sostiene que lo aplicable es la segunda parte del Art. 309 del mismo cuerpo legal, —31 L.P.R.A. sec. 1176—. Dispone así el artículo en su totalidad: "Cuando se divide en brazos la corriente de un río, dejando aislada una heredad o parte de ella, el dueño de la misma conserva su propiedad. *Igualmente la conserva si queda separada de la heredad por la corriente una porción de terreno*". (Lo subrayado es la parte que la demandante sostiene debe aplicarse.)

El Código Civil dedica los artículos 302 al 309, los dos incluidos, a regular las relaciones entre las personas que poseen terrenos confinantes con cuerpos de agua. En cada caso establece a quién pertenece el terreno afectado por las variaciones que los propios cuerpos de agua ocasionan. El fenómeno de la accesión del suelo puede realizarse por cuatro maneras distintas, a saber: (a) por aluvión; (¹) (b) por

---

(¹) Lo regula el Art. 302 que aplicó el juez de instancia al resolver el presente caso y que transcribimos en el texto de la opinión. El Art. 303 —31 L.P.R.A. sec. 1170—establece los derechos de los que poseen terrenos confinantes con estanques o lagunas y dispone así:

"Los dueños de las heredades confinantes con estanques o lagunas no adquieren el terreno descubierto por la disminución natural de las aguas, ni pierden el que éstas inundan en las crecidas extraordinarias."

avulsión;(²) (c) por mutación del álveo o cambio de cauce de un río;(³) (d) por formación de islas.(⁴) Los casos (a), (b) y (d) los regulan disposiciones que tomamos del Código Civil Español, la forma de regular la (c) la adopta-

(²) Lo regulan los Arts. 304—31 L.P.R.A. sec. 1171—y 305—31 L.P.R.A. sec. 1172—que disponen:

Art. 304. "Cuando la corriente de un río, arroyo o torrente, segrega de una heredad de su ribera una porción conocida de terreno y lo transporta a otra heredad, el dueño de la finca a que pertenecía la parte segregada conserva la propiedad de ésta."

Art. 305. "Los árboles arrancados y transportados por la corriente de las aguas pertenecen al propietario del terreno a donde vayan a parar, si no los reclaman dentro de un mes los antiguos dueños. Si éstos los reclaman, deberán abonar los gastos ocasionados en recogerlos o ponerlos en lugar seguro."

Refiriéndose a esta forma Pedregal, en sus *Comentarios al Código Civil Español*, pág. 585, escolio 1 (Madrid 1889) critica este artículo ya que "...ocurre tan rara vez, y aún en el supuesto, muy problemático, de que ocurra, será tan raro que tenga cuenta al propietario perjudicado ir o recoger y trasladar su tierra al punto donde se encontraba, o a otro ... que pueden calificarse estas de verdaderas cavilocidades."

(³) La mutación de cauce la reglamentan los Arts. 306—31 L.P.R.A. sec. 1173—y 307—31 L.P.R.A. sec. 1174 que leen así:

Art. 306. "Si un río o corriente de agua, sea o no navegable, abriese un nuevo cauce, abandonando el antiguo, los propietarios del suelo nuevamente ocupado tomarán, por vía de indemnización, el antiguo cauce del río, cada uno en proporción a la cantidad de tierra que hubiese perdido.

"Dichos propietarios tendrán derecho a la propiedad de sus anteriores terrenos si el río o corriente volviese a correr por su antiguo cauce."

Art. 307. "Cuando un río navegable, variando naturalmente de dirección, se abre un nuevo cauce en heredad privada, este cauce entrará en el dominio público. El dueño de la heredad lo recobrará siempre que las aguas vuelvan a dejarlo en seco, ya naturalmente, ya por trabajos legalmente autorizados al efecto."

(⁴) Los derechos en cuanto a las islas que se forman están regulados por los Arts. 308—31 L.P.R.A. sec. 1175 y 309—31 L.P.R.A. sec. 1176— (transcrito en el texto de la opinión).

Art. 308. "Las islas que por sucesiva acumulación de arrastres superiores se van formando en los ríos, pertenecen a los dueños de las márgenes u orillas más cercanas a cada una, o a las de ambas márgenes si la isla se hallase en medio del río, dividiéndose entonces longitudinalmente por la mitad. Si una sola isla así formada distase de una margen más que de otra, será por completo dueño de ella el de la más cercana."

mos del Código de Luisiana, el Art. 306 y del de España, el Art. 307.

Consideraremos en primer término el precepto aplicado al resolver este caso para luego ocuparnos del que la recurrente entiende debió aplicarse. ■

El Art. 302 de nuestro Código Civil—corresponde al 366 del Español—consagra una antigua y tradicional forma de adquirir. Sin que expresamente se use el vocablo, el ameritado artículo incorpora al código lo que los romanos denominaron "alluvio" y que en el vernáculo se conoce por aluvión. Aluvión se define como "el aumento de terreno que se va formando sucesiva e imperceptiblemente en las orillas o márgenes del río". Enciclopedia Española de Derecho y Administración, Tomo 2, pág. 580, Aluvión (Madrid 1849), y esa misma obra a la pág. 581 continúa expresando: "El aluvión considerado como medio de adquirir la propiedad es de derecho de gentes y corresponde á la clase de aquellos que como dijimos en el artículo ADQUISICIÓN, se consideran originarios o primitivos. El mismo emperador Justiniano aceptando la doctrina del jurisconsulto Gayo lo asentó así expresamente diciendo: 'Prœterea quod per alluvionem agro tuo flumen adjecit jure gentium tibi adquiritur'. Sin embargo, no por eso fue conocido en la legislación antigua de aquella nación ni se estableció hasta la época gloriosa del emperador Justiniano, en que una respuesta del jurisconsulto Casio a la consulta que le hicieron los propietarios ribereños del Pó sobre las agregaciones que unos campos habían experimentado en perjuicio de otros, elevada después a regla, dio lugar a la legislación sancionada sobre esta materia."

En el derecho romano se expuso así la norma:

"Es aluvión el incremento latente . . . Lo que por aluvión se unió o incorporó al fundo se hace de la misma naturaleza de éste . . . Se considera agregado por aluvión lo que se aumenta paulatinamente, de modo que no se pueda conocer lo que en cada momento se incorpora . . . Lo que el río agregó

a nuestro predio por aluvión lo adquirimos para nosotros. . ."
Oyuelos *Digesto,* Tomo 2, pág. 105 (Madrid 1917).

El Rey Sabio la incorporó inculcando la idea cardinal expuesta en el derecho romano. Así la Ley 26, título 28 de la Tercera Partida expresa:

"Crecen los ríos a veces de manera que quitan y menguan a algunos en las heredades que tienen en las riberas, y dan y acrecen a los otros que las tienen de la otra parte. Y por ende decimos que cuanto los ríos quitan a los hombres poco a poco de manera que no puedan entender la cantidad de ello, porque no lo llevan ayuntadamente, que lo ganan los dueños de aquellas heredades a quien lo ayuntan, y los otros a quien lo quitan no tienen en ello que ver." Oyuelos, *op. cit.,* págs. 105–106.

El mismo principio aparece en el Código Napoleónico. Dispone el Art. 556 de ese cuerpo legal:

"Los aumentos lentos e imperceptibles(5) que hacen los ríos en las heredades limítrofes, se llaman 'aluvión', y ceden en favor de los dueños de estas heredades, tanto si es el río navegable como si es flotable, o no; con la obligación en el primer caso de dejar el camino o espacio necesario para las maniobras de embarque y desembarque según previenen los reglamentos."

Esta forma de adquirir ha sido aceptada universalmente. "Esta resolución de la ley romana, ha merecido el asentimiento universal de todas las legislaciones. Todas, sin excepción, la confirman . . ." Falcón, *Código Civil Español,* Tomo 2do., pág. 52, (Madrid 1889). En América aparece entre otros, en los códigos de Argentina, Art. 2572; Bolivia, Art. 301 (tiene una redacción muy explícita al disponer: "Los aumentos que se forman sucesiva e imperceptiblemente

---

(5) El legislador español en vez de usar el concepto "lentos e imperceptibles" para describir los acrecentamientos aluviales usó el concepto "paulatinamente". En las Partidas se usó "poco a poco". El concepto "poco a poco" o "paulatinamente" es más preciso. Y de hecho se ha interpretado que "imperceptiblemente" en lo que a las formaciones aluviales se refiere, equivale a "paulatinamente". *Brighton & Howe General Gas Co.* v. *Howe Bungalows,* [1924], 1 Ch. 372, 13 B.R.C. 183.

en los fundos ribereños por la acción del río se llaman aluvión. El aluvión aprovecha al propietario de la ribera, sin que el dueño de la otra pueda reclamar el terreno que haya perdido") ; Brasil, Art. 538; Colombia, Art. 719; Cuba, Art. 366; Chile, Art. 650; El Salvador, Art. 631; Luisiana, Art. 509; Mexico, Art. 908; Quebec, Art. 420; Uruguay, Art. 752.

En Inglaterra, Bracton la definió así:

"El aluvión es un incremento latente y se dice que ha sido incrementado por aluvión cuanto se incrementa gradualmente, en forma tal que no puede ser percibido en el momento en que ocurre la accesión; porque aunque se observe fijamente durante un día completo las limitaciones de la vista no pueden percibir estos incrementos tan sutiles, como lo sería en el caso de una calabaza, y otras cosas parecidas." ■

De ahí fue aceptada como principio fundamental en la ley común. *R. v. Lord Yarborough*, 5 Bing. 163 (1828), 1 Eng. Rul. Cas. 458. El precepto que nos legara la Roma clásica, de que el aluvión pertenece al dueño del terreno que incrementa es aceptado en la India. En el caso de *Clarke* v. *Edmonton*, (Can. 1929) 4 D.L.R. 1010, la Corte Suprema del Canadá cita del caso de *Sri Balsu Ramalaksmamma* v. *Collector of Godaveri District*, (1899) L. R. 26 Ind. App. 107, lo siguiente: "No existe en Madrás, como en Bengala, ley alguna que adopte el principio de que el acrecentamiento gradual redunde en beneficio del predio al cual se adhiere; pero la regla, aunque no escrita, está igualmente bien establecida." Era la ley en la Rusia pre-revolucionaria. Pedregal, *Código Civil Español Comentado*, Tomo I, pág. 584 (Madrid 1889). Prevalece en las jurisdicciones de los estados federados de la Unión Americana. *Ford* v. *Turner*, 142 So.2d 335 (Fla. 1962) ; *Heikkinnen* v. *Hansen*, 360 P.2d 147 (Wash. 1961) ; *Wyat* v. *Wycough*, 341 S.W.2d 18 (Ark. 1961) ; *Freiland* v. *Pennsylvania R. Co.*, 47 A.H. 745 (Penn. 1901) ; *Willot* v. *Miller*, 55 P.2d 90 (Okla. 1936) ; *Hubbard* v. *Manwell*, 14 A.H. 693 (Vt. 1888) ; *State of Kansas* v. *Meriwether et al.*,

182 F. 457 (8vo. cir. 1910) ; *Abott* v. *City of Fort Madison,* 108 N.W.2d 263 (Iowa 1961) ; *Helsey* v. *McCormick et al.,* 18 N.Y. 147 (1858). Underhill, *Determination of Rights Along the Missouri River,* 42 Iowa L. Rev. 58 (1956) ; Anotación, *The Law of Accretion to Shore Lands,* 58 L.R.A. 193 (1901).

Sobre la razón de ser de esta regla que por tantos años ha regido las relaciones de los propietarios que confinan con los ríos, regla que hemos visto ha sido general y universalmente adoptada desde los tiempos antiguos, dice Bonel y Sánchez, Tomo II, Libro 2 de su obra *Código Civil Español* (Barcelona 1890) a la pág. 171:

"En este artículo se preceptúa ya lo que en Roma se trató bajo la palabra alluvionem en el párrafo 20, tit. 1., lib. 2º de las Instituciones de Justiniano, y luego se transcribió a la ley 26, título 28, Partida 3ª: Quod per alluvionem agro tuo flumen adjecit jure gentium tibi adquiritur, según la Instituta el párrafo citado, dando idea ó definiendo lo que era aluvión diciendo: Est autem alluvio incrementum latens quod ita paulatim adjicitur, etc. Con solo la palabra incrementum latens bastaría para significarnos la extensión del aluvión y el sentido jurídico que tal accesión pueda tener, así es que dicha frase se ve reproducida en nuestro derecho patrio sin que tenga parecido con ninguna de las otras disposiciones de nuestros Códigos antiguos, y envuelven en sí la idea, tal definición, de que por derecho de gentes adquiera un predio los aumentos que insensiblemente recibe aunque sea á expensas de su vecinos. Por eso la ley de Partida antes citada, traduciendo tal definición, nos viene á decir que todo cuanto los rios tuellen á ome poco á poco, de manera que non pueden entender la quantia dello, porque no lo llevan ayuntadamente, que lo ganan los señores de aquellas heredades á quien lo ayuntan, é los otros á quien lo tuellen non han en ello que ver; y útil es á todos los propietarios el transigir mutuamente con esos cambios insensibles y que algunos comentaristas conceptúan como efectos ineludibles de un tácito pacto aleatorio habido con la Naturaleza."

Laurent, en sus *Principios de Derecho Civil Francés,* en el Tomo VI, a la pág. 423 (México 1895) expresa:

"Portalis nos dirá los motivos ·de estas disposiciones. En el antiguo derecho, había lucha entre los ribereños, el Estado y los señores de alta justicia. Según varias costumbres los ribereños aprovechaban el aluvión, otros los atribuían al rey cuando el río era navegable, y a los señores altas justicias cuando el río no era navegable. Los ribereños eran sacrificados por la mayor parte de los autores. Portalis dice que los aluviones deben pertenecer al propietario ribereño por la máxima natural de que el provecho pertenece al que está expuesto a sufrir el daño. Unas propiedades ribereñas están —más amenazadas que otras. Existe, por decirlo así, un contrato aleatorio entre el propietario ribereño y la naturaleza, cuya marcha puede a cada instante asolar o aumentar ese fundo. En ese sentido se dice que los ríos dan y quitan como la fortuna. . ."

Manresa sobre esto expone en el Tomo III de sus *Comentarios al Código Civil* a la pág. 323 (7ma. ed. Madrid 1952) :

"Pero hay todavía otra razón, que alega muy oportunamente el tratadista italiano F. Ricci. Consiste ésta en el propio interés de la industria agrícola, que pide que el acrecentamiento por aluvión sea del propietario ribereño. ¿Por quién, en efecto, puede cultivarse y aprovecharse mejor el terreno de aluvión sino por el mismo propietario del fundo al cual se adhiere? Asignando a otro cualquiera una faja de tierra producida por el aluvión, aparte de que por sí sola no podría por lo general, cultivarse, sería necesario imponer al propietario del fundo ribereño la nueva carga de una servidumbre, al objeto de facilitar el aprovechamiento de aquélla, lo cual, además de no ser justo, sería muy ocasionado a litigios y contiendas."

En el caso de *Morgan* v. *Livingston*, 6 Martin's Reports (O.S.) 19 (1819), la Corte Suprema de Luisiana dijo a la pág. 242:

"El aluvión es una forma de adquirir la propiedad según la ley natural; según aquellos principios y máximas que reglamentaban la conducta de los hombres antes de surgir las sociedades.

"Los juristas romanos, nos informa Grocio, probaron que éste era un derecho natural, basándose en la máxima de que

es justo que las ventajas de una cosa pertenezcan a quien soporta las desventajas.

"Esta opinión de los juristas romanos prevalece en Francia. 'La equidad,' dice Brillon, 'exige que aquél que sufre la incomodidad coseche los beneficios. Puesto que nada hay más perjudicial que la cercanía de un río, que inunda, sumerge y deteriora los terrenos vecinos, nada es más justo que el propietario, a quien el río con frecuencia ha perjudicado, conserve, con exclusión de otros, cuando sea beneficioso, lo que el río le ofrece, que es más bien una remuneración que una ganancia; más en concepto de cambio que de regalo.'

"El derecho al acrecentamiento por aluvión está basado en la máxima de ley que otorga el beneficio y las ventajas de una cosa a aquél que está expuesto a sufrir sus daños y pérdidas."

Ver además: *Succession of Delachaise* v. *Maginnis*, 11 So. 715 (La. 1892) y *Miami Corporation* v. *State*, 173 So. 315 (La. 1936).

El Tribunal Supremo de la República de Colombia se expresó así según se transcribe su dictamen en las anotaciones al Art. 719 de su Código Civil en la obra de Jorge Ortega Torres, *Código Civil Anotado* (Bogotá 1957):

"Los fundamentos de la accesión por aluvión explican la exigencia de los antedichos requisitos y contribuyen a señalar y determinar el exacto campo de aplicación de dicha institución.

"Estos fundamentos son: a) en primer lugar el legislador quiso establecer en favor de los riberanos una compensación por el riesgo que ellos corren por el hecho de ser colindantes con el agua; b) en segundo lugar la ley quiso evitar que los propietarios riberanos, a quienes el hecho de serlo les reporta beneficios, se vean privados de ese beneficio por un hecho natural."

El supremo tribunal de la República de Colombia expone otra razón. Es de incalculable beneficio para un propietario lindar con un río que le puede servir de abrevadero para su ganado, así como para otros usos agrícolas. El aluvión podría, si la ley no le concediere su beneficio, interponerse entre su predio y el río, privándole de los beneficios que la

colindancia con el río conlleva. Véanse además: *Lamprey* v. *Mitcalf*, 53 N.W. 1139 (Minn. 1893) ; *Cortés* v. *Ciudad de Manila*, 10 Juri. Fil. 575, 579 (1908) ; Scævola, *Código Civil*, Tomo VI (5ta. ed. Madrid 1949), a la pág. 602 a 605; Valverde, *Tratado de Derecho Civil Español*, Tomo II, pág. 97 (4ta. ed. Valladolid, 1936) ; Oyuelos *op. cit.*, Tomo 2, pág. 106.

Establecido que el modo de adquirir por aluvión es aceptado generalmente, precisa ahora que expliquemos cómo opera.

En la Enciclopedia Española de Derecho y Administración ante, a la pág. 580, se dice: ■

"Hemos dicho que el aluvión consiste en el aumento imperceptible y progresivo que van teniendo con el tiempo los campos contiguos a las riberas de los ríos. Esta significación es la más estricta y común de la palabra aluvión; pero también se designa con ella entre los comentadores del derecho el incremento que reciben los campos del lado de un río cuando éste desviándose y separándose poco a poco de manera que no pueda conocerse, va dejando en seco alguna parte de su cauce. . ."

"El código francés, la legislación inglesa, y casi todas las modernas que han adoptado en este punto la doctrina de los romanos, no solamente han reconocido y tomado la palabra *aluvión* en el primer concepto, esto es, en el de una agregación lenta e imperceptible a los campos riberiegos, sino también en el segundo, o sea en el de retirarse el río por una de sus orillas y dejar en seco parte de la otra. El código francés, con el cual convienen casi todos los modernos en la doctrina relativa a esta materia, dispone en su art. 557, que las ensenadas que forma el agua corriente que se retira insensiblemente de una de sus orillas cargando sobre la otra, pertenecen al propietario de la orilla descubierta por el derecho de aluvión."

Así se entiende en nuestro tiempo en España. A ese efecto expresa Gayoso Arias en artículo que aparece en el Tomo XII de la *Revista de Derecho Privado*, pág. 617 (1925) titulado *Casos de Accesión Natural:*

"... el acrecentamiento ha de recibirlo paulatinamente el fundo frontero al cauce, y ha de recibirlo por efecto de la corriente. Ahora bien, este efecto puede consistir lo mismo en una sedimentación que en una retirada, según hemos visto, y por ende, ambas han de ser lentas, insensibles, para que quepan en el marco de aquel precepto."

Véase al mismo efecto el Comentario del Consejero de Estado Portalis; en la Exposición de Motivos del Código de Napoleón, *El Código de Napoleón, Curso de Legislación* (Barcelona 1839).

El precepto que estudiamos requiere que el acrecentamiento que beneficie a un ribereño sea paulatino. Ninguna autoridad expresa con tanta precisión lo que este término significa en relación con el aluvión, como lo hace el Tribunal Supremo Federal en el caso de *County of St. Clair* v. *Lovingston*, 90 U.S. 46 (1874), luego de considerar la ley romana, el código napoleónico, la ley común tal como se reconoce en Inglaterra y los estados de la Unión Americana y la ley española según expuesta en la Partida III, título 28, Ley 56, ante, para concluir que es un principio de universal aceptación. Se expresó así el Tribunal:

"A la luz de lo establecido por las autoridades, podemos definir aluvión como la adición a los terrenos ribereños que, en forma gradual e imperceptible, hacen las aguas colindantes con dichos terrenos. Se distingue del aumento creado por el retiro permanente de las mareas y es contrario a la avulsión. La fórmula para determinar lo que es gradual e imperceptible según la definición es que, aunque los testigos puedan observar periódicamente que han ocurrido cambios, no podían percibirlos cuando estaban ocurriendo ... El derecho del terreno ribereño a los acrecentamientos por aluvión es un atributo esencial e inherente a la propiedad original. El título de propiedad sobre este aumento surge de la ley natural. Igual sucede al dueño de los árboles en cuanto a sus frutos y al dueño de los rebaños en cuanto a sus crías. El derecho es uno natural, no civil. .. La máxima 'quien lleve la carga debe llevar los beneficios' es la base de tal derecho. El propietario corre el riesgo de recibir los daños o de percibir los beneficios que las

aguas causen a su propiedad. Si hay una pérdida gradual, deberá soportarla; si hay un aumento gradual, será suyo. . ."

Al mismo efecto, *Clarke* v. *Edmonton*, supra. El caso de *Lovingston* fue citado como autoridad en el de *Kansas* v. *Missouri*, 322 U.S. 213 (1944), cuando el tribunal expresó: "No hay disputa entre los estados en cuanto al derecho aplicable. Ambos están acordes que cuando los cambios ocurren por el lento y paulatino proceso de accesión la línea divisoria sigue el cambio en el curso de la corriente. Igualmente están acordes en que un cambio súbito y abrupto en dicho curso no altera la línea divisoria, sino que ésta queda en el lugar por donde pasaba la corriente."

En *Kansas* v. *Missouri*, supra, el primero reclamaba del segundo dos mil acres de terreno. Alegaba que pertenecían a su jurisdicción y que pasaron a formar parte del estado de Missouri por un cambio abrupto del curso del río Missouri. Las partes como antes expusimos, aceptaban la ley que es análoga a la que priva entre particulares. El tribunal, luego de considerar toda la evidencia, falló a favor de Missouri pues el cambio del curso del río fue gradual y lentamente.

Sobre el requisito de que el acrecentamiento sea paulatino e imperceptible expresa *Laurent* a la pág. 423 de la obra antes citada que "[e]n vano se dice, que siendo insensible el crecimiento es por lo mismo, imperceptible. El aluvión es insensible en el sentido de que no se le ve formarse; pero es muy perceptible, porque de lo contrario no se disputaría su posesión". Y a la página 439: "Se concibe que como las tierras de aluvión se forman insensiblemente pertenezcan por derecho de accesión a los propietarios ribereños; pero aunque sucesivos e imperceptibles, estos crecimientos son a veces muy considerables". "Hay aluviones más considerables que el fundo principal", pág. 444. "Los terrenos de nueva formación se forman a expensas de los demás ribereños ¿no sería justo que estos fuesen indemnizados de

esa lenta expropiación que produce la acción de las aguas? La ley no les concede ninguna indemnización porque es imposible determinar cuáles son los ribereños que han ganado lo que los otros pierden. Cuando un río se dirige de una playa a la otra, se sabe muy bien quien es el propietario ganancioso, pero se ignora adonde se dirigen las partículas térreas que las aguas arrancan al propietario de la ribera; y en caso de aluvión propiamente dicho, tampoco se sabe de cuáles fundos provienen de los acrecentamientos insensibles que enriquecen a unos a expensas de otros. Luego es imposible aplicar la máxima de equidad que prohibe enriquecerse a expensas agenas." ▮

Ahora, ¿cuáles son los requisitos que deben concurrir para que un terrateniente pueda hacer suyos los incrementos a la cabida de su finca ocasionados por el cambio de curso de un río que es colindancia común con otro fundo? Santamaría en su obra *Comentarios al Código Civil* (Madrid 1958) los expone suscintamente citando a Gay de Montella:

"Son tres las condiciones generales precisas para la atribución de un aluvión a predio lindante con una corriente, según dice Gay de Montella (Tratado de la Legislación de Aguas 1956, I, 199) a saber: (a) que se trate de un fundo que tenga por límites o fronteras el mismo cauce de un río o arroyo; (b) que el aterramiento o el terreno abandonado por las aguas, que constituye el aluvión esté adherido a la ribera o margen y forme parte integrante del fundo ribereño, y (c) que este aterramiento se haya formado lenta o imperceptiblemente, por obra de la naturaleza y no por obra del hombre."(6) ▮

Examinada la prueba que tuvo ante su consideración el juez de instancia notaremos de inmediato que en el presente concurren las tres condiciones requeridas para que exista el aluvión. El límite del fundo de la demandada, es el Río

_____

(6) Se ha sostenido que no "...hay obstáculo, según la doctrina, para que el propietario se encuentre en definitiva favorecido por trabajos hechos *para la defensa de su finca,* como plantaciones, empalizadas o revestimientos ... siempre que no invadan el cauce." Puig Peña, *Tratado de Derecho Civil Español,* Tomo III, Vol. 1, pág. 123.

Grande de Loíza; la porción de terreno en controversia forma parte integrante de la finca de la demandada. Usando las palabras del juez sentenciador "la parcela reclamada se ha confundido con la finca de la demandada". Lo determinante en casos de aluvión es que el acrecentamiento del fundo como consecuencia de la variación del cauce del río sea paulatino, como estableció la ley romana y consagró nuestro Código Civil, que ocurra poco a poco como determinó el Rey Sabio o imperceptiblemente como la estatuyen otras legislaciones y la ley común (*common law*). Y que el acrecentamiento en el caso de autos ha ocurrido así, lo revela claramente la prueba presentada por ambas partes. El río ha ido variando su cauce paulatinamente, imperceptiblemente, poco a poco. El acrecentamiento se ha ido formando poco a poco, paulatinamente, —comenzó en el año 1914—ha sido por obra del río y en el mismo no ha intervenido la mano del hombre. Como expresó la corte a quo "En el cambio del curso del río no ha intervenido obra alguna de las partes".

Carece de significación el hecho de que pueda reconocerse el área exacta que ha ido a formar parte de la finca de la demandada por poderse determinar los rumbos y distancias de la porción de terreno objeto de este pleito. Lo importante y determinante es que el proceso de acrecentamiento sea paulatino, ocasionado por el efecto de la corriente de las aguas; que el aterramiento o el terreno abandonado por las aguas que constituye el aluvión esté adherido a la ribera o margen y forme parte integrante del fundo ribereño.

En los casos de accesión por aluvión debido a que el río varía el cauce y se adentra en los terrenos del predio situado al otro lado del río, el acrecentamiento habido en el predio beneficiado ha sido a expensas del predio opuesto. Con motivo de la fuerza erosiva de la corriente, el cauce del río se desplaza quedando al descubierto el antiguo lecho sobre el cual la corriente en sus avenidas va depositando partículas

de tierra, arena y piedra que arrastra de predios ubicados río arriba. Esta porción de terreno así formada se integra con el predio contiguo. Si este proceso es lento, paulatino, imperceptible a los ojos cuando se trata de observarlo día a día, es un caso típico de aluvión. En la generalidad de estos casos podría por mensuras llevadas a cabo durante los años en que el río ha ido variando el cauce, por los planos que se hubieran levantado y por el testimonio de personas que conozcan la comarca, determinarse qué parte del perímetro del predio beneficiado formaba parte del predio situado al lado opuesto del río. Pero es que la ley universalmente aceptada le adjudica al predio ribereño beneficiado los aumentos que paulatina e imperceptiblemente han acrecentado el predio en el momento en que todavía no pueden ser identificados por lo imperceptible que es su formación, y una vez adjudicados, por el hecho de que con el transcurso de los años puedan convertirse en un acrecentamiento aluvial considerable, el dueño del predio beneficiado no pierde lo que la ley periódicamente le ha venido adjudicando.

En el caso de *Clarke* v. *Edmonton*, supra, la Corte Suprema del Canadá sostuvo la procedencia del aluvión aunque el acrecentamiento fuera identificable. Entre otros citó un caso irlandés para sostener su posición. Citando de la opinión del Juez Gibson en el caso de *A–G* v. *M'Carthy*, 2 IR, R., a las págs. 288–289 (1911), "cada acrecentamiento gradual se incorpora al predio principal, y aunque el conjunto de acrecentamientos demuestre una ampliación substancial del predio original, esto no puede eliminar retroactivamente el título adquirido sobre los minúsculos y paulatinos aumentos recibidos". En otras palabras, cuando el aumento toma lugar en forma imperceptible pasa a ser propiedad del dueño del predio al cual se incorpora; su título se establece día a día y ningún acrecentamiento repentino causado por crecientes puede despojarle del título que ya tenía establecido."

En el caso de *Brighton & Howe General Gas Co. v. Howe Bungalows*, 1 Ch. 372, 13 Br. Rul. Cas. 183 (1924), se consideró la cuestión de si procedía la accesión por aluvión, si el acrecentamiento podía ser identificado. Se admitía la regla general de que el acrecentamiento por aluvión beneficia el predio a que se adhiere, pero se alegaba que eso era así "[c]uando ninguna otra persona demuestre su título sobre tal predio". La corte refutó esta contención y manifestó que "[a]sí condicionada la regla general, trátese de un acrecentamiento natural o artificial, se convertiría en una mera trivialidad".

Como antes expusimos, el incremento por aluvión puede ocurrir por la sedimentación de las partículas de tierra que la corriente transporta o con las insensibles retiradas de las aguas de una orilla a otra. Comentando sobre la formación aluvial y considerando el aspecto de si el propietario del predio perjudicado puede reclamar del beneficiado por el aluvión, Ruggiero en sus *Instituciones de Derecho Civil*, Vol. I, pág. 618 (Madrid) al considerar las disposiciones correspondientes del Código Italiano sostiene que:

"Arreglo patrimonial entre los propietarios de aquellas orillas que hayan sido mermadas o cubiertas por las aguas y aquellos otros que resulten favorecidos por el incremento, no tiene lugar; no pueden los primeros, ni siquiera cuando (como en la segunda de ambas figuras) se puede más fácilmente reconocer la pérdida sufrida, reclamar de la orilla opuesta el terreno perdido."

La Corte Suprema de Filipinas en *Cañac v. Tuason*, 5 Jur. Fil. 718 (1906), tuvo ante su consideración un asunto similar al que nos ocupa. La dueña de una finca colindante con un río reclamaba como suya una parcela de 30 hectáreas (equivalentes a 76.33 cuerdas) que por la acción del río San Mateo había ido a formar parte de la finca situada al lado opuesto del río. Se situaba la parcela en controversia treinta años antes de iniciarse la acción como formando parte de la finca de la demandante. El fallo dictado fue en contra de

la demandante aplicando el Art. 366 del Código Civil de Filipinas, de igual numeración que el español y análogo al 302 nuestro. Se invocó el Art. 368 que trata sobre el fenómeno de la avulsión y al negarse a aplicarlo el tribunal se expresó así: "Ningún testigo ha dicho que alguno de los trozos así segregados hubiesen sido transportados al otro lado del río. Este hecho sólo demuestra que las declaraciones de los testigos son insuficientes para declarar el caso comprendido en el artículo 368 (equivalente al 305 nuestro). Aunque se hubiese desprendido de la hacienda de Mariquina una porción de terreno del tamaño de una hectárea, si ésta fue no obstante destrozada por el río y no fue transportada a Payatas, no es de aplicación el artículo 368. Nos inclinamos a creer que lo que los testigos observaron fue, según declaraciones de uno o dos de ellos, que el río iba corroyendo cada año cierta porción de su margen; es decir que el río según palabras textuales del abogado de los apelantes en su alegato destruía su orilla. Por las pruebas obrantes en autos es imposible decir que el río hubiese segregado de la hacienda Mariquina una porción conocida de terreno y la hubiese transportado a la de Payatas. El mero hecho de que hace treinta años el terreno aquí cuestionado se hallaba en la margen del río próximo a Mariquina, no es suficiente para estimar aplicable al caso el artículo 368."

Como expone el Tribunal Supremo de Filipinas, no tiene importancia si la corriente se lleva un pedazo considerable de tierra, si la misma se disuelve, como generalmente ocurre, y es llevada río abajo. A esos efectos el Tribunal Supremo de los Estados Unidos ha expresado lo siguiente en el caso de *Nebraska* v. *Iowa*, 143 U.S. 359 (1892) a la pág. 369:

". . . dos cosas, conocidas de todos los que habitan las riberas del Río Misuri y revelado por la prueba testifical, deben tenerse en mente; primero, que aunque puede haber un abrupto desprendimiento de una porción de la ribera, discernible al momento de ocurrir, dicha porción no es arrastrada por la

corriente como una masa sólida y compacta, sino que se divide y desintegra en partículas que lleva la corriente, dando a ésta el color fangoso que a través de la historia de la nación ha caracterizado al Misuri; y segundo, que aunque el desprendimiento de esa porción de la ribera ocurra obvia y súbitaménte, dicha masa sólida de terreno no es transportada como tal a la ribera opuesta ni ocurre la creación inmediata de una nueva ribera al otro lado del río. El acrecentamiento, no importa cómo ocurra el desprendimiento en la otra heredad, es siempre gradual y toma lugar por el depósito imperceptible de las partículas de tierra que arrastra la corriente. Hay, excepto en aquellos casos de avulsión que veremos más adelante, en todos los casos de acrecentamiento de riberas, un proceso gradual e imperceptible. No hay un acumulamiento instantáneo de acres o cuerdas de terreno en una ribera mientras la mirada permanece fija en la corriente. Aún la ingeniería carece de pericia suficiente para determinar dónde la tierra ha abandonado la ribera y, desintegrándose en el río, dónde va a ser depositada. La porción desprendida pasa a formar parte de la masa flotante de tierra y agua y las partículas pueden ser depositadas a una distancia de una a cincuenta millas, en cualquiera de las dos orillas. No hay, independientemente de la rapidez con que ocurre el proceso de disminución o acrecentamiento, un desprendimiento de tierra de una margen y depósito del mismo en la margen opuesta."

Ver además Laurent, *op. cit.*, pág. 423.

En California, donde como hemos dicho existe una disposición similar al Art. 302 nuestro, se le ha dado igual solución. *O'Connor* v. *Rumiano Brothers Company*, 321 P.2d 122 (Cal. 1958). La Corte Suprema Federal tuvo ante su consideración un asunto semejante, e igualmente lo resolvió reconociendo el derecho del dueño del predio ribereño que había sido acrecentado con el aluvión. *Jefferis* v. *East Omaha Land Co.*, 134 U.S. 178 (1890). Ver además Sentencia del Tribunal Supremo de España de 4 de mayo de 1928, 183 Jurisprudencia Civil 606.

Pasamos a considerar ahora el precepto que la demandante-recurrente sostiene debió aplicarse. Dijimos que era

la segunda parte del Art. 309 del Código Civil que dispone: "Cuando se divide en brazos la corriente de un río, dejando aislada una heredad o parte de ella, el dueño de la misma conserva su propiedad. *Igualmente la conserva si queda separada de la heredad por la corriente una porción de terreno*". ▮

Para sostener su tesis la demandante considera aisladamente la segunda parte del artículo como si fuera una disposición separada sin relación alguna con lo expuesto en la oración anterior. Si esa fuera la forma de considerarla nos encontraríamos que por un lado el Art. 302 concede al dueño del predio que se beneficia con los acrecentamientos del aluvión la propiedad de éstos, mientras la disposición aislada que invoca la demandante se la niega. ▮

Todos los comentaristas que estudian la disposición correspondiente del Código Civil Español, que invoca la demandante—la segunda parte del artículo 309 de nuestro Código equivalente al Art. 374 del español—lo hacen bajo el concepto de formación de islas. Todos consideran que esa parte del artículo invocado regula una especie de formación de isla; cuando una porción de terreno se separa abruptamente de la finca afectada adversamente por la corriente manteniéndose aislada en el cauce del río la porción desprendida. Así Scaevola comenta la segunda parte del Art. 374:

"Otra modalidad que puede presentar el caso de formación de islas, resuelve la segunda parte del artículo que analizamos. Las islas a que éste alude reconocen por causa un desprendimiento o disgregación de parte de terreno del predio limítrofe, cuya parte se interpone en medio de la corriente. Es, pues, este un caso análogo al de la avulsión o fuerza manifiesta del río. Efectivamente al comentar el artículo 368 advertimos que, para que tuviera lugar lo que en él se ordena, no era preciso que la porción conocida de terreno llegara a incorporarse a la heredad opuesta a la de que había partido. Aun quedando dicha porción interpuesta en la corriente, siempre que reuniera las condiciones de ser conocida por su composición y aspecto y por denunciar el dueño que la venía poseyendo, continuaría

siendo propiedad de éste. *Pues bien, esta norma tan equitativa aparece recogida en la parte segunda del artículo 374."* (Énfasis suplido.) Scævola, *Código Civil,* Tomo 6, págs. 640–641 (5ta. ed. 1949).

Y al comentar el Art. 373 equivalente al 308 nuestro expresa Scævola en la obra citada a la pág. 634:

"Hay otras varias clases de islas: las que forman delta, de las cuales se ocupa el artículo 374, y las que se mantienen inestables en la superficie de las aguas, perteneciendo los terrenos que las formen a sus primitivos dueños, mientras no cese dicha inestabilidad; *de esta última especie de islas se ocupa la segunda parte del artículo 374, al declarar que conserva el dueño de la heredad la porción de terreno separada de ella por la corriente."* (Énfasis suplido.)

De igual forma interpretan el Art. 374, Manresa, *op. cit.,* pág. 359; Puig Brutau, *Fundamentos de Derecho Civil,* Tomo III, pág. 233, (Barcelona 1933); Borell y Soler, *Derecho Civil Español,* Tomo II, pág. 231 (Barcelona 1955); Castán, *Derecho Civil Español Común y Foral,* Tomo 2, pág. 241 (9na. ed. Madrid 1957); Valverde, *Tratado de Derecho Civil Español,* Vol. 2, págs. 103–105 (4ta. ed. Valladolid 1936) y Sánchez Román, *Estudios de Derecho Civil,* Tomo III, págs. 144–145 (Madrid 1900) y ver además Padilla, *Código Civil Anotado,* pág. 622 (Manila 1953).

Es ineludible pues, la conclusión de que la disposición del Art. 309 que invoca la recurrente no es de aplicación a los hechos de este caso.

Ningunas palabras más apropiadas para aplicarlas a la situación de hechos que este caso presenta que las expresadas por el Juez Estey de la Corte Suprema del Canadá en su voto particular en el caso de *Queens County* v. *Cooper,* [1946] 4 D.L.R. 705, 719. En este caso los papeles están invertidos. El dueño del predio beneficiado con el aluvión instó una acción para impedir que la demandada interfiriera con el disfrute pacífico del acrecentamiento habido en su predio.

"Las posiciones relativas del apelante y apelado han sido establecidas por la naturaleza. El apelante ha sido afortunado; el apelado, desafortunado. La naturaleza en ocasiones favorece a uno y otras veces a otro, pero estos son cambios incidentales a los terrenos que colindan con los cuerpos de agua. La ley reconoce la inevitabilidad de tales cambios y ajusta los derechos de los propietarios en la misma forma, extensión y tiempo en que la naturaleza altera sus posiciones. Es el proceso natural de accesión que ha alterado las áreas . . ."

*Por todo lo anteriormente expuesto, se confirma la sentencia recurrida.*

El Juez Asociado Señor Blanco Lugo no intervino y los Jueces Asociados Señores Rigau y Ramírez Bages disintieron.

——————

Opinión Disidente del Juez Asociado Sr. Rigau, con la cual concurre el Juez Asociado Sr. Ramírez Bages.

San Juan, Puerto Rico, a 12 de diciembre de 1962.

Lamento disentir de la opinión mayoritaria en este caso. Se trata de accesión pero también se trata de lo que Ihering, Castán Tobeñas y otros han llamado el problema de la realización del derecho. Es decir, tomar en cada caso el derecho que está escrito sobre el papel y hacerlo realidad. La realización es la vida del Derecho. Como ha escrito Castán "el Derecho es para la vida o, más exactamente, tiene por fin la realización de la justicia en la vida" y añade el mismo autor "esta realización del Derecho puede ser concebida, y ha sido, en efecto, entendida, según las épocas, de dos modos distintos: como mera *aplicación* de una norma abstracta a los casos concretos, o como verdadera y propia *realización* o *elaboración* del Derecho." (ª) Me decido por el segundo modo, de los dos señalados por Castán, y creo que el Tribunal en este caso tomó el camino del primero. Creo que fue indu-

——————

(ª) Castán, *Teoría de la Aplicación e Investigación del Derecho*, Instituto Editorial Reus, Madrid, 1947, p. 1; Ihering, *L'esprit du Droit Romain dans les Diverses Phases de son Développement*, trad. de Meulenaere, t. III, Paris, 1877, pp. 15 y ss. citado en Castán, *Ibid.*

cido a error por jurisprudencia conceptualista del siglo XIX, jurisprudencia que perseguía más la forma que el fondo, y que era dada a ofrecer razonamientos especiosos para sostener enfoques jurídicos que lo que realmente necesitaban era un reexamen franco y racional.(b)   Pero entremos en materia y luego regresaremos a este tema que ahora abandonamos.

## I

En el caso de autos debíamos resolver si ha habido accesión natural, inmobiliaria y fluvial.   Celebrado el juicio, el caso se sometió al Tribunal Superior mediante evidencia documental consistente en planos y fotografías aéreas y por las estipulaciones que las partes acordaron en conferencia con antelación al juicio.   El tribunal además realizó una inspección ocular.

Los hechos probados y estipulados son sencillos:  En el 1935 la demandada adquirió una finca en el municipio de Carolina cuya colindancia Sur la constituía el Río Grande de Loíza.   En 1948 la demandante adquirió la propiedad ubicada al Sur de la finca de la demandada, de manera que el mencionado río servía de colindancia común entre ambas propiedades.   La prueba revela que en el curso de varios años el río varió su cauce hacia el Sur adentrándose en la propiedad de la demandante, dividiéndola en forma tal que ha dejado a su lado Norte una parcela de terreno de 7.40 cuerdas separada de la finca principal y cuya parcela ha quedado contigua a la finca de la demandada.   El tribunal de instancia lo expresa de este modo:

"Desde el año 1914 el Río Grande de Loíza ha venido variando su curso paulatinamente, especialmente en el sector

---

(b) Algunas de esas teorías tuvieron su razón de ser cuando surgieron al mundo del derecho pero una vez cumplidos sus fines era preciso revisarlas y así lo han sido generalmente.   Para una crítica de esos enfoques puede verse Pound, *Jurisprudence*, West Publishing Co., St. Paul, Minn., 1959, tomo I, pp. 91–117.

en donde está localizada la parcela de terreno en controversia. De ahí que antes del cambio paulatino de la dirección del cauce del río, *el perímetro de terreno de 7.40 cuerdas que se describe en el párrafo anterior formaba parte de la finca de la demandante y quedaba al Sur del río, pero como resultado de dicho cambio paulatino de dirección del curso del río, dicho perímetro de terreno de 7.40 cuerdas fue paulatinamente separado del resto de la finca de la demandante,* y actualmente queda al Norte del río y contiguo a la finca de la demandada en su parte Sur. Según hemos podido apreciar el río se ha ido retirando poco a poco en este sector y ha ido depositando arrastres en esta ribera." Conclusión de hecho Núm. 5 del Tribunal Superior. (Subrayado nuestro.)

La demandada ha tomado posesión de la mencionada parcela. No hay controversia en cuanto al área que la misma cubre pues su descripción, tamaño, colindancias, rumbos y distancias fueron objeto de prueba y de estipulación. En la demanda aparece la detallada y técnica descripción de esta parcela por distancias en metros, rumbos por grados, etc., pero creo innecesaria reproducirla aquí. Baste con recordar el dato.

Instó la demandante acción reivindicatoria para recobrar la posesión de la mencionada parcela, a lo que se opuso la demandada alegando que había adquirido ese terreno por derecho de accesión y se basó en el Art. 302 del Código Civil, 31 L.P.R.A. sec. 1169, cuyo texto examinaremos en breve. El tribunal de instancia aceptó el razonamiento de la demandada, declaró que eran de aplicación los artículos 302 del Código Civil y 47 de la Ley de Aguas, 12 L.P.R.A. sec. 638, y declaró sin lugar la demanda. Para revisar esa sentencia recurrió al Tribunal Supremo la demandante y sostiene que es de aplicación el Art. 309 del Código Civil y no el 302.

El derecho de accesión está regido por un Capítulo del Código Civil que comprende los artículos 287 al 318 (31 L.P.R.A. secs. 1131–1199) y en cuanto a la accesión fluvial son también de aplicación varios artículos de la Ley de Aguas comprendidos en el Subcapítulo de esa ley titulado

"Accesiones, Arrastres y Sedimentos de Aguas", 12 L.P.R.A. secs. 631-642. Las disposiciones de la Ley de Aguas sobre esta materia son parecidas a las del Código Civil.

El primero de los artículos del Código Civil sobre la materia, el 287, dispone que "La propiedad de los bienes, ya sean muebles o inmuebles, lleva consigo el derecho por accesión, a todo lo que ellos producen, o se les une o incorpora, natural o artificialmente." 31 L.P.R.A. sec. 1131. Explica Puig Peña que la palabra *accesión* viene de la latina *accesio*, la que a su vez procede de *ad* (hacia) y *cedo* (aproximarse), por lo que supone la idea de *aproximación* de una cosa, de *adherencia*, de *incorporación*. [1]

Tradicionalmente la accesión física ha sido dividida por la doctrina en dos grandes especies, pues ésta puede originarse por un movimiento de dentro afuera (accesión por *producción*) o de fuera adentro (accesión por *unión*). A la accesión por unión también se le llama accesión *continua*. Ésta se subdivide en *inmobiliaria* o *mobiliaria*, según que se realice en provecho de un inmueble o de cosa mueble, y en *natural* e *industrial* o *artificial*, según que la agregación sea debido a una fuerza natural o al trabajo del hombre. [2]

Nuestro Código Civil reconoce, entre otras, la accesión continua, inmobiliaria, natural y fluvial en sus cuatro formas clásicas de *aluvión, avulsión* o fuerza del río, *mutación de cauce* y *formación de islas*. También dispone en relación con la accesión para casos de terrenos contiguos a estanques y lagunas; para cuando se divide en brazos la corriente de un río; y para cuando una porción de terreno queda separada de la finca principal por la corriente. En la discusión que sigue se observará que todos estos supuestos que hemos mencionado (aluvión, avulsión, etc.) *no* tienen iguales consecuencias en lo que al derecho de propiedad se refiere. Algu-

---

[1] Puig Peña, *Tratado de Derecho Civil Español*, Tomo III, p. 115.

[2] Castán, *Derecho Civil Español, Común y Foral*, 9a. ed., Tomo II, p. 233.

nos de esos fenómenos físicos producen la accesión jurídica y otros no; o dicho de otra manera, algunos confieren la propiedad y otros no la confieren. Sobre el particular el derecho civil desde antiguo y nuestros Código Civil y la Ley de Aguas vigentes reconocen las correspondientes diferencias que la recta razón y el sentido de justicia y de equidad dictan.

Identificaremos cada uno de los supuestos que hemos mencionado pero vamos a dejar para último turno los casos del aluvión y del terreno que queda separado de la finca principal por la corriente, porque esos son los dos supuestos que aquí están involucrados. La *avulsión* ocurre cuando la corriente de un río, arroyo o torrente, segrega de una heredad una porción conocida de terreno y lo transporta a otra heredad. En este caso el dueño de la finca a que pertenecía la parte segregada conserva la propiedad de ésta.(³) Mediante la avulsión el aumento que recibe el predio ribereño no es debido a la sedimentación de las aguas, sino a la acción violenta y transitoria de una avenida.(⁴) En tal caso, dice Manresa, la ley no permite los efectos de la accesión, por ser conocido el dueño del terreno agregado y por no haberse confundido los dos terrenos que desde aquel momento resultarán colindantes.(⁵)

La *mutación de cauce* ocurre, como la misma frase indica, cuando por variar naturalmente el curso de las aguas, un río abandona su cauce y ocupa otro nuevo.(⁶) Sobre el particular el Art. 306 de nuestro Código Civil dispone que si un río abriese un nuevo cauce, abandonando el antiguo, los propietarios del suelo nuevamente ocupado tomarán, por vía de indemnización, el antiguo cauce del río, cada

---

(³) Art. 304, Código Civil, 31 L.P.R.A. sec. 1171; Art. 44, Ley de Aguas, 12 L.P.R.A. sec. 635.

(⁴) Castán, *Ibid.*, p. 238.

(⁵) Manresa, *Comentarios al Código Civil Español*, 6ta. ed., Tomo III, p. 244.

(⁶) Arts. 306 y 307, Código Civil, 31 L.P.R.A. secs. 1173 y 1174; Arts. 41 y 42, Ley de Aguas, 12 L.P.R.A. secs. 632 y 633.

uno en proporción a la cantidad de tierra que hubiese perdido. 31 L.P.R.A. sec. 1173.

Y la Ley de Aguas expresa en su Art. 41 que los cauces de los ríos "que queden abandonados por variar naturalmente el curso de las aguas pertenecen a los dueños de los terrenos ribereños en toda la longitud respectiva. Si el cauce abandonado separaba heredades de distintos dueños, la nueva línea divisoria correrá equidistante de unas y otras." 12 L.P.R.A. sec. 632.

En cuanto a los *terrenos contiguos a estanques y lagunas* baste consignar que a tenor con el Código Civil y con la Ley de Aguas los dueños de los predios confinantes no adquieren el terreno descubierto por la disminución natural de las aguas ni pierden el que éstas inunden en las crecidas.([7])

La modalidad conocida por *formación de islas* incluye varias posibilidades: (a) La formación o nacimiento de islas en los mares adyacentes a las costas; (b) la formación de islas en los ríos navegables; (c) islas formadas en los ríos no navegables por sucesiva acumulación de arrastres; (d) islas formadas por dividirse en brazos la corriente de un río.([8]) El Artículo 371 del Código Civil Español dispone que las islas formadas en los mares adyacentes a las costas y en los ríos navegables pertenecen al Estado. En cuanto a las islas formadas en los ríos no navegables el Código Español, Art. 373, concede la accesión en términos iguales al nuestro. El Código puertorriqueño, Art. 308, no distingue y se refiere en general a las islas que se formen "en los ríos". Sobre el particular dispone:

"Las islas que por sucesiva acumulación de arrastres superiores se van formando en los ríos, pertenecen a los dueños de las márgenes u orillas más cercanas a cada una, o a las

---

([7]) Art. 303, Código Civil, 31 L.P.R.A. sec. 1170; Art. 40, Ley de Aguas, 12 L.P.R.A. sec. 631.

([8]) Castán, *Ibid.*, pp. 240–241; Puig Brutau, *Fundamentos de Derecho Civil*, 1953, Tomo III, p. 233; Puig Peña, *Ibid.*, pp. 126–128; Manresa, *Ibid.*, pp. 254–256 y 259–264.

de ambas márgenes si la isla se hallase en medio del río, divi-
diéndose entonces longitudinalmente por la mitad. Si una sola
isla así formada distase de una margen más que de otra, será
por completo dueño de ella el de la más cercana." Art. 308;
31 L.P.R.A. sec. 1175.

En igual sentido se pronuncia la Ley de Aguas en su
Art. 46; 12 L.P.R.A. sec. 637.

Llegamos ahora a las dos situaciones teóricas envueltas
en este caso: el aluvión y la que se produce cuando una por-
ción de terreno queda separada de la finca principal por la
corriente del río. Por lo tanto debemos examinar estos dos
supuestos más detenidamente que los anteriormente mencio-
nados. El *aluvión* está consignado mediante el Art. 302 del
Código Civil y el 47 de la Ley de Aguas. En ese artículo
302 se ampara la demandada. El tribunal de instancia se
basó en ambos. La demandante se basa en el Art. 309 del
Código Civil. Veamos los textos de esos artículos. El Art.
302 del Código Civil (aluvión) dispone:

"Pertenece a los dueños de las heredades confinantes con
las riberas de los ríos, el acrecentamiento que aquéllas reciben
paulatinamente por el efecto de la corriente de las aguas."
31 L.P.R.A. sec. 1169.

El Art. 47 de la Ley de Aguas lee como sigue:

"Pertenece a los dueños de los terrenos confinantes con los
arroyos, torrentes, ríos y lagos, el acrecentamiento que reciban
paulatinamente por la accesión o sedimentación de las aguas.
Los sedimentos minerales que como tales se hubiesen de utilizar
habrán de solicitarse con arreglo a la legislación de minas."
12 L.P.R.A. sec. 638.

Para cuando *se divide en brazos la corriente* de un río
y para cuando una porción de terreno *queda separada por
la corriente* de la finca principal, el Código Civil en su
Art. 309 declara:

"Cuando se divide en brazos la corriente de un río, dejando
aislada una heredad o parte de ella, el dueño de la misma

conserva su propiedad. *Igualmente la conserva si queda sepa-rada de la heredad por la corriente una porción de terreno."* (Subrayado nuestro.) 31 L.P.R.A. sec. 1176.

Vistas las situaciones que sobre la accesión inmobiliaria fluvial considera el derecho positivo y las reglas que sobre el particular tiene establecidas, cabe preguntar ¿cuál es el criterio que han utilizado el Código Civil y la Ley de Aguas para conceder o denegar la accesión jurídica, esto es, el derecho de propiedad, en cada una de esas situaciones? Excepto en el caso de las islas formadas en el mar y en los ríos navegables, que el Código Civil Español con buen sen-tido social las declara propiedad pública, puede contestarse a la anterior pregunta diciendo que el problema gira en torno a si las fuerzas naturales han creado o no propiedad nueva, la *res nova* de que hablan los tratadistas.[9] Como conse-cuencia de ese criterio o paralelo al mismo juega también papel importante el hecho de si al terreno o propiedad agre-gada se le conoce dueño.

Nótese que en los casos en que las aguas no han creado territorio nuevo sino que lo que ha ocurrido es un *despren-dimiento* como en el caso de la avulsión (Art. 304) o un *aislamiento* o *separación* de parte de una finca por la corriente de agua (Art. 309), no se produce la accesión legal; el ante-rior dueño conserva la propiedad del terreno desprendido, aislado o separado. Por el contrario, la accesión jurídica se produce en aquellos casos en que debido a la acción paulatina de las aguas (Código Civil) y a la *sedimentación* de las mis-mas (Ley de Aguas) se ha creado *propiedad nueva,* sin *dueño conocido,* como en los casos de aluvión (Art. 302) y de for-mación de islas. En otras palabras, el Código no ordena el despojo de un propietario por el hecho inopinado de que un torrente le fraccione su finca. Lo que el Código hace es estatuir una serie de reglas convenientes para los casos en

---

[9] Puig Peña, *Ibid.,* p. 116; Castán, *Ibid.,* p. 235; Puig Brutau, *Ibid.,* p. 215.

que la sedimentación lenta de las aguas ha creado una *nueva* superficie, adherida e incorporada a una ribera o en medio de un río. A la inversa, cuando la propiedad afectada por la acción de las aguas es vieja y tiene dueño (como en los casos de avulsión y separación de parcela de terreno) el dueño conserva su derecho de propiedad sobre el terreno afectado.

En el caso de autos no se trata de "sedimentos" que las corrientes de las aguas han puesto a las orillas del cauce."(10) No se trata de una propiedad nueva, recién creada, de la *res nova*, disponible para ser ocupada por alguien. Tampoco se trata de un terreno de procedencia desconocida, sin dueño conocido, que hay que atribuirle al propietario contiguo. Se trata de una parcela de terreno de 7.40 cuerdas que allí *ya existía* cuando en el año 1935 la demandada adquirió su finca; se trata de una propiedad que en el 1948 adquirió la demandante como parte de la finca principal que adquirió entonces.

Lo que ha ocurrido es que antes el río pasaba por el lado Norte de esa parcela y, como consecuencia de haber variado su curso, hoy pasa por el lado Sur de la misma. Apurando el argumento de la demandada, si el río se hubiese adentrado más al Sur y corriese ahora a lo largo de la colindancia Sur de la finca de la demandante (según antes corría por su colindancia Norte) ¿significaría eso que la demandante se hubiese quedado totalmente sin su propiedad y que toda su finca hubiese pasado a ser propiedad de la demandada? La contestación es claramente en la negativa. Nuestro derecho no reconoce la expropiación fluvial, sin compensación y para fines privados.

Comentando el Art. 374 español, que es igual al 309 nuestro, y que comprende una situación como la de autos, Puig Brutau expresa: "En lugar de un caso de accesión, se

---

(10) Puig Peña, obra y tomo citados, p. 121.

trata de una norma destinada a reafirmar el derecho del propietario que ya lo era de la porción separada." [11] En igual sentido se manifiestan Scævola, [12] Pedreira Castro, [13] Puig Peña, [14] Castán [15] y Manresa. [16]

El juez sentenciador en su inspección ocular apreció que en el terreno en cuestión hay grava, arena y piedras. Es natural que así sea. El río, al pasar durante determinado tiempo sobre ese terreno tiene que haber lavado el mantillo o humus dejando expuestas las piedras que allí hubiese, además de que es natural que a su vez fuese dejando sobre ese terreno arena y grava. Pero lo determinante es que eso lo hizo el río *sobre el terreno que allí existía;* el río no creó esas 7.40 cuerdas.

## II

Lo que yo he planteado es que los artículos del Código Civil que rigen esta materia no lo hacen caprichosamente sino que tienen un razonamiento tras sí. Esto es, cuando la propiedad afectada por el agua ya existía y tenía dueño conocido el dueño conserva su propiedad, pues eso es lo justo. El Código no autoriza el despojo por el acto fortuito de las aguas. Ejemplos de lo dicho son los artículos anteriormente discutidos en esta opinión: Art. 303 (caso de estanques), Art. 304 (avulsión), Art. 305 (árboles transportados por la corriente), Art. 306 (río que abandona su cauce), Art. 307 (nuevo cauce de río) y Art. 309 (terrenos aislados o separados por los ríos). Por el contrario, cuando las aguas, mediante sedimentación, *crean* propiedad que allí no existía, es que surge el problema de a quién le pertenece esa propiedad nueva, y entonces el Código provee unas reglas para

---

[11] Puig Brutau, obra y tomo citados, p. 233 *in fine.*
[12] *Código Civil,* 5ta. ed., Tomo VI, pp. 640–641.
[13] *El Código Civil a Través de la Jurisprudencia,* Tomo I, p. 498.
[14] Obra y tomo citados, p. 128.
[15] Obra y tomo citados, p. 241.
[16] Obra y tomo citados, p. 266.

adjudicar la propiedad. Estos son los casos de los Arts. 302 (aluvión) y 308 (formación de islas en los ríos por la acumulación de arrastres).

En el caso de autos, como hemos dicho, se trata de una parcela de terreno que allí *existía*, de descripción y dimensiones *exactas*, conocidas y estipuladas por las partes, y cuya parcela tenía dueño conocido antes de apropiarse de ella la demandada. Dicha parcela quedó aislada de la finca principal por acción del río. Para regir esa situación hay ley provista por el Código Civil; ley expresa y basada en fundamentos racionales y de justicia. Nótese que la propia opinión mayoritaria comienza declarando que el río ha variado su curso, situación que está regida por el Art. 309 del Código Civil. Esa realidad clara y concreta de este caso, antes descrita, no puede oscurecerse tras una cortina de citas que son unas, discusiones teóricas en abstracto y otras, decisiones, unas ajustadas a otros hechos y otras reflejo de unas corrientes jurisprudenciales de la antigua escuela analítica que, como señala Pound en su obra antes citada, pasan juicio sobre las teorías y no sobre los méritos de los casos. Como ha tenido ocasión de señalar el Tribunal Supremo de los Estados Unidos, los problemas que se traen a los tribunales no se resuelven mediante el acopio de citas sino de acuerdo con las realidades del récord. *Indianapolis* v. *Chase National Bank*, 314 U. S. 63, 69 (1941).

En la opinión mayoritaria se señala que el autor Santamaría enumera las condiciones que deben concurrir para la atribución del aluvión y se expresa que son (a) que el fundo sea ribereño, (b) que el aluvión esté adherido al fundo y (c) que se haya formado natural y lentamente. Partiendo de esa enumeración el Tribunal encuentra que en el caso de autos concurren esas condiciones y concluye que por lo tanto se trata de un caso de aluvión. Pero es que se olvida una condición que por obvia está implícita en la discusión del

citado autor y es que el terreno a ser adjudicado por derecho de accesión no puede ser ya, anteriormente, propiedad de otro. Si es propiedad de otro, como ocurre en el caso de autos, no hay aluvión jurídica en virtud del Art. 309, como hemos explicado antes.

Típicamente, como ocurre cuando se utilizan los enfoques exclusivamente analíticos para resolver casos, la opinión mayoritaria no se adentra en los méritos del caso (¿Es propiedad de alguien el terreno que el demandado ha ocupado? ¿Mediante el Art. 302 se despoja a alguien de lo suyo? ¿Es eso justo o razonable?) sino que la opinión gira sobre una palabra, la palabra "paulatinamente" utilizada en el Art. 302. No es la particular situación de hechos del caso lo importante, lo "importante y determinante" nos dice la opinión mayoritaria es que el proceso sea "paulatino". Creo que esa interpretación de ese articulado es errónea. La ley no exige que la variación de cauce que aísle una porción de terreno sea *súbita* o *paulatina*. Un río puede variar su cauce con distintos grados de velocidad. Prodúzcase el *ais-lamiento* de la porción de terreno lenta o rápidamente, el dueño del mismo conserva su propiedad, Art. 309. El aluvión, donde ocurra y cuando forme la *res nova* (como no ocurre en este caso), será paulatino pues la sedimentación es lenta por su propia naturaleza. El criterio decisivo de la ley no es pues si la separación de la porción de terreno de la finca principal fue rápida o lenta, sino (1) si se creó mediante aluvión la *res nova* (en cuyo caso habría aluvión jurídica) o (2) si lo que ocurrió fue separación de la finca principal (en cuyo caso el dueño de la porción separada conserva su propiedad).

Como puede verse yo propongo que se interpreten *en conjunto* esos artículos del Código Civil y de la Ley de Aguas y que se atienda a su propósito. Al interpretar el Art. 302 desconectado de los demás artículos de ese capítulo del Código

Civil el Tribunal, en mi opinión, llega a una conclusión equivocada. Como diría Holmes "It is a fallacy to break the fagot stick by stick" (Es una falacia quebrar el haz varilla a varilla), *Schlitz Brewing Co.* v. *Houston Ice & Brewing Co.*, 250 U. S. 28, 29 (1919).

Penosamente, en mi opinión, el Tribunal, como si hubiese sido atraído por la magia de la palabra "paulatinamente" tomó el camino que lo llevó a una de esas decisiones inmisericordes de que habló el Juez Cardozo. Como en Cardozo, no sólo el Derecho, sino que también el idioma inglés, alcanzó una de sus cumbres no voy a intentar traducir el fragmento que deseo aquí transcribir. Lo incluyo tal cual él lo escribió:

"Judges march at times to pitiless conclusions under the prod of a remorseless logic which is supposed to leave them no alternative. They deplore the sacrificial rite. They perform it, none the less, with averted gaze, convinced as they plunge the knife that they obey the bidding of their office. The victim is offered up to the gods of jurisprudence on the altar of regularity . . . I suspect that many of these sacrifices would have been discovered to be needless if a sounder analysis of the growth of law, a deeper and truer comprehension of its methods, had opened the priestly ears to the call of other voices. We should know, if thus informed, that magic words and incantations are as fatal to our science as they are to any other." ([17])

Por las razones expuestas creo que en este caso no se trata de un caso de accesión por aluvión sino de un caso en que una porción de terreno quedó separada de la finca principal por el río y el dueño debe conservar su propiedad, a tenor con lo prescrito en el Art. 309 del Código Civil que también resulta ser lo justo y razonable.

Estoy autorizado para informar que el Juez Asociado Sr. Ramírez Bages concurre con esta opinión.

---

([17]) Cardozo, *Growth of the Law*, p. 66; también en *Selected Writings of Benjamin N. Cardozo*, ed. por Margaret E. Hall, p. 215, 1947.