ASOCIACIÓN DE DUEÑOS DE CASAS VERANIEGAS DE LA PARGUERA, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. TELESFORO ROSA RESTO, JUEZ, demandado; COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO, interventora.

*Número:* O-72-75          *Resuelto:* 15 de mayo de 1973

---

*Carlos E. Colón, Charles R. Cuprill* y *Alberto Colón Bermúdez,* abogados de los peticionarios; *Gilberto Gierbolini, Procurador General,* y *Roberto Armstrong, Jr., Procurador General Auxiliar,* abogados de la interventora.

PER CURIAM: Con fecha 24 de noviembre de 1969 la Comisión de Servicio Público de Puerto Rico emitió órdenes dirigidas a los dueños y poseedores de casetas, casas-botes y otros tipos de estructuras localizadas en el área de "La Parguera" en la municipalidad de Lajas, comprendida entre Punta Jorobado y Punta Pitahaya en la referida municipalidad. Las órdenes le concedían a los dueños de las estructuras un término de sesenta días para removerlas y, de no ser removidas, se les habría de citar a audiencia pública en determinada fecha y lugar, para mostrar causas por las

cuales no procedía dictar una orden de cese y desistimiento que ordenase la demolición de las estructuras existentes.

Los cargos formulados contra los querellados son básicamente tres, que pueden resumirse así: (1) la clandestinidad de las construcciones de las estructuras; (2) la ilegalidad, basada en que las estructuras están enclavadas en su totalidad o en parte en aguas navegables y territoriales de Puerto Rico y los Estados Unidos, y sus dueños se encuentran desprovistos del debido endoso y permiso de la Comisión de Servicio Público y del Secretario del Ejército de los Estados Unidos, respectivamente; (3) la contaminación del ambiente ocasionada por el uso de dichas estructuras.

Señalada la audiencia correspondiente, comparecieron por escrito los querellados, unos 117 dueños de estructuras, formularon una contestación conjunta y solicitaron la consolidación de las querellas para todos los fines. La Comisión proveyó de conformidad. Pero una petición para que las vistas tuviesen lugar ante la Comisión "en pleno", y no ante examinadores o empleados, fue denegada por la Comisión.

Las audiencias fueron celebradas los días 16 y 17 de marzo y 13 de abril de 1970 en las oficinas de la Comisión en Mayagüez, presididas éstas por el Asesor Jurídico de la Comisión de Servicio Público y un Examinador Especial. En 13 de noviembre de 1970 la Comisión emitió una resolución, luego de formular determinaciones de hecho y de derecho y hacer constar que había ". . . examinado y ponderado detenidamente todo el récord de estos procedimientos. . . .", ordenando a los querellados remover las estructuras dentro de un plazo de 60 días y, de no hacerlo, el gobierno, a través del Departamento de Obras Públicas o de cualquier otra de sus agencias o instrumentalidades procedería a hacerlo con cargo a los querellados.

Los querellados recurrieron al Tribunal Superior en solicitud de revisión, alegando como fundamentos, entre otros, la falta de jurisdicción de la Comisión para intervenir con las

propiedades de los recurrentes; que las casas veraniegas de los recurrentes no están construidas sobre aguas navegables de los Estados Unidos, ni obstruyen la libre navegación; porque las residencias veraniegas de los recurrentes no contaminan las aguas de la Bahía Fosforescente de la Parguera; porque no existe ley alguna estatal o federal que obligue a los recurrentes a solicitar permiso del Secretario del Ejército de los Estados Unidos para llevar a cabo la construcción de sus casas; porque las conclusiones de la Comisión no están sostenidas por prueba sustancial y son contrarias a la prueba ofrecida; porque la orden recurrida es confiscatoria y priva a los recurrentes de sus propiedades sin el debido proceso de ley y sin justa compensación; porque dicha orden es una opresiva e injusta, pues afecta los derechos de un conglomerado de personas que al construir lo hicieron alentados por el Estado y a la ciencia y paciencia de éste, cobrándoles contribuciones sobre sus edificaciones, brindándoles permisos de uso para suplirse de agua y energía eléctrica y cobrándoles sumas de dinero por los árboles de mangles que cortaron para construir, por lo que los recurrentes no son usurpadores de terrenos del Estado y, por el contrario, son edificadores de buena fe de acuerdo a las disposiciones del Art. 300 del Código Civil.

Luego de expedido el auto de revisión, los recurrentes solicitaron del tribunal a quo que declarase nula e ineficaz en derecho la Resolución y Orden de la Comisión de Servicio Público. A continuación copiamos el texto, en lo aquí pertinente, de dicha solicitud: (Folio 99)

"2. Que de acuerdo a los propios términos de la resolución las vistas públicas que tuvieron efecto en Mayagüez, Puerto Rico, los días 16 y 17 de marzo de 1970 fueron presididas por los Asesores Jurídicos de la Comisión Srs. Sigfredo Irizarry el día 16 de marzo de 1970 y por José Anglada Segarra el día 17 de marzo de 1970; que en dichas vistas se ofrecieron abundantes pruebas testificales y periciales mediante testigos bajo juramento; que en dichas vistas ninguno de los Hons. Comisionados

de Servicio Público estuvieron presentes y por lo tanto no vieron, oyeron y captaron las declaraciones de los testigos.

3. Que de récord se desprende que las notas taquigráficas de la evidencia testificial que desfiló en dichas vistas no fueron transcritas y se desprende además que no se rindió informe por escrito y conclusiones de hechos por los Srs. Examinadores que presidieron dichas vistas que pudieran haber adoptado como suyas los Hons. Comisionados.

4. Que en las circunstancias antes apuntadas surge palpablemente que la Resolución y Orden dictada en este caso como cuestión de realidad fue así dictada por la Hon. Comisión sin haber tenido realmente ante sí pruebas que justifiquen sus conclusiones de hechos; tampoco elementos suficientes para dirimir conflictos evidenciarios en las pruebas ya que no vieron ni oyeron declarar a los testigos ni tienen o tuvieron conocimiento alguno personal de las pruebas allí ofrecidas."

En otras palabras, los recurrentes alegaron en esa ocasión, y sostienen aquí, que la Comisión de Servicio Público no cumplió con los requisitos mínimos del debido proceso de ley en la etapa adjudicativa, pues ninguno de los comisionados que participaron en la decisión comparecieron a las vistas públicas, no vieron ni oyeron declarar a los testigos y peritos de una y otra parte; la prueba oral no fue transcrita, ni aparece informe alguno escrito de los examinadores que presidieron las vistas consignando sus propias recomendaciones sobre la prueba oral que pudieran haber sido adoptadas por la Comisión.

El juez a quo sostuvo que la Resolución de la Comisión era "prima facie" válida, en base a la presunción de regularidad, no rebatida por los recurrentes, que disfrutan sus actuaciones; lo sencillo de los hechos en controversia; la numerosa prueba documental que tuvo ante sí sobre la cual la Comisión estuvo en condiciones de basar sus determinaciones independientemente de la prueba oral practicada.

Acordamos revisar. El expediente administrativo que tenemos ante nos revela que el procedimiento iniciado por la

Comisión de Servicio Público persigue el propósito de remover un número mayor de 100 estructuras en el área de la Parguera alegadamente construidas ilegal y clandestinamente en la zona de aguas navegables bajo la jurisdicción del Secretario del Ejército de los Estados Unidos y de la Comisión de Servicio Público de Puerto Rico, con arreglo a ciertas disposiciones de leyes federales y locales, y que constituyen una fuente de contaminación en el área, llegando a afectar las Bahías Fosforescentes del lugar.

El medio utilizado—órdenes para mostrar causa dirigidas contra los dueños o poseedores de las estructuras—por la Comisión, aunque sumario y drástico, ofreció a los querellados las garantías básicas del debido proceso de ley—notificación de la querella y el derecho a defenderse en audiencia pública. Los recurrentes admiten que estos requisitos mínimos fueron cumplidos sustancialmente por la Comisión en esta etapa. Como hemos visto la irregularidad que señalan la ubican los recurrentes en la etapa adjudicativa.

La audiencia era más que una mera formalidad en el trámite administrativo. La audiencia era un requisito básico que la Comisión tenía que cumplir. Los querellados habían puesto en controversia el derecho alegado de la Comisión a demoler un gran número de casas y otras estructuras con un valor calculado en casi un millón trescientos mil dólares, cuyas casas fluctuaban entre 53 y 4 años de construidas, pagan al erario público—108 de ellas—contribuciones sobre la propiedad y tienen servicio de energía eléctrica (104) y acueducto (99).

Del propio récord administrativo surge que las audiencias públicas celebradas en Mayagüez durante varios días fueron presididas por un asesor legal de la Comisión y un examinador. Durante las mismas se recibió, según se expresa en la resolución, abundante prueba testifical y documental sobre la navegabilidad de las aguas en que ubican las estructuras y sobre la contaminación en el sector de la Parguera y hasta

Bahía Fosforescente o Luminiscente. Ninguno de los miembros de la Comisión asistió a las vistas. No existe una transcripción de los testimonios que fueron recibidos durante los tres días de audiencias. Tampoco aparece informe escrito alguno de los examinadores en torno a la prueba oral practicada y propuestas recomendaciones à la Comisión, ni en qué forma vino en conocimiento de los comisionados los testimonios vertidos por los testigos.

■ La presunción de regularidad de los procedimientos no puede apoyarse en meras expresiones en el acuerdo de demolición adoptado, al efecto de que sus miembros habían "examinado" y "ponderado detenidamente todo el récord de estos procedimientos", ya que en cuanto a la prueba oral recibida es evidente que no lo fue.

■ No estamos sosteniendo que el Debido Procedimiento exija que en estos casos el funcionario que oiga la prueba tiene que ser el mismo que lo decida. Véanse *Luce & Co.* v. *Junta de Salario Mínimo*, 62 D.P.R. 452 (1943); *Atiles* v. *Comisión Industrial*, 63 D.P.R. 62 (1944). Entre los poderes de delegación que tiene, la Comisión de Servicio Público puede asignar o referir cualquier asunto a uno o más comisionados, o a uno o más empleados o examinadores con autoridad de recibir evidencia, reglamentar el curso de la audiencia y recomendar decisiones. Art. 7, Ley Núm. 109 del 28 de junio de 1962, 27 L.P.R.A. sec. 1054. No vemos nada malo que un examinador oiga, reciba la prueba y formule sus recomendaciones al organismo administrativo. Pero lo que sí es necesario es que se honre el principio de que todos aquellos que participen en la decisión conozcan la evidencia; de lo contrario, la justicia se estaría haciendo por delegación y no por aquellos llamados o designados por ley para hacerla. El cumplimiento de esta norma básica debe surgir afirmativamente del récord administrativo. Como expresamos en *Luce & Co.* v. *Junta de Salario Mínimo*, supra, pág. 481, ". . . las juntas o tribunales administrativos no sólo deben hacer justicia si que actuar de

tal forma que el interesado pueda darse cuenta de que la justicia se ha hecho. A lograr ese fin tanto contribuye el procedimiento seguido como el resultado de la decisión misma." No basta que se trate de llenar la forma con meras expresiones de que se ha "examinado" y "ponderado detenidamente" todo el récord; es indispensable que aparezca que se ha cumplido con la sustancia.

■ En el presente no existe una transcripción de lo que ocurrió durante los tres días de audiencias. El récord no incluye informe o recomendación alguna de los examinadores ni en qué forma los Comisionados se familiarizaron con la evidencia oral recibida durante esos tres días. Esto, más que una irregularidad, constituye un defecto fatal en el procedimiento adjudicativo.

Por lo expuesto, *se anulará la resolución dictada por el Tribunal Superior objeto de este recurso y la Resolución y Acuerdo de la Comisión de Servicio Público de Puerto Rico mediante la cual se ordena la remoción de las estructuras de los peticionarios; y se devolverán los autos a dicha Comisión a fin de que sus miembros, una vez preparada, lean la transcripción de los testimonios orales recibidos, debiendo además concederse una nueva oportunidad a las partes para que presenten informes escritos u orales para ser oídos o leídos por la Comisión en pleno, efectuado lo cual procederá ésta a adoptar el acuerdo que corresponda.*

El Juez Asociado, Señor Irizarry Yunqué, no intervino.