ASOCIACIÓN DE DUEÑOS DE CASAS VERANIEGAS DE LA PARGUERA, ETC., peticionaria y recurrente, *v.* HON. COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO, demandada y recurrida.

*Número:* O-75-475          *Resuelto:* 27 de septiembre de 1976

*Carlos E. Colón,* abogado de la recurrente; *Miriam Naveira de Rodón, Procuradora General, Mario L. Paniagua, Procurador General Auxiliar,* abogados de la recurrida.

PER CURIAM: Mediante su Resolución de 13 de noviembre de 1970 la Comisión de Servicio Público de Puerto Rico ordenó la remoción de unas 121 casas ubicadas en la orilla del mar en el sur de Puerto Rico, en el sector conocido como La Parguera, jurisdicción del Municipio de Lajas. Emitió dicha orden la Comisión por entender que esas casas se habían construido sin su permiso y sin el permiso del Secretario de la Guerra de los Estados Unidos. Lo del Secretario de la Guerra se basa en que se alega que las casas están ubicadas en aguas navegables sobre las cuales el gobierno federal tiene custodia concurrente con el Gobierno de Puerto Rico.

La Comisión celebró audiencias en marzo y abril de 1970 en Mayagüez, presididas éstas por un asesor jurídico de la Comisión. Luego de dichas vistas recayó la Resolución antes mencionada ordenando la remoción de las casas, lo cual para efectos prácticos implica su destrucción. Los querellados recurrieron al Tribunal Superior en solicitud de revisión, alegando como fundamentos, entre otros, la falta de jurisdicción de la Comisión para intervenir con las propiedades de los recurrentes. Para otros fundamentos en apoyo de dicha

petición de revisión, puede verse *Asoc. D.C.V.P.* v. *Tribunal Superior,* 101 D.P.R. 416, 419 (1973).

Luego de expedido el auto de revisión por el Tribunal Superior los recurrentes solicitaron de dicho tribunal que declarase nula la Resolución de la Comisión basándose en que no se había cumplido con los requisitos mínimos del debido proceso de ley en la etapa adjudicativa, porque ninguno de los comisionados que participaron en la decisión de la Comisión comparecieron a las vistas públicas, ni vieron ni oyeron declarar a los testigos y peritos de una y otra parte, porque la prueba oral no fue transcrita ni aparece informe alguno escrito de los examinadores que presidieron las vistas los cuales pudieron haber sido adoptados por la Comisión. El tribunal de instancia sostuvo la validez de la Resolución impugnada y ante la petición de *certiorari* de los querellados acordamos revisar.

Mediante nuestra opinión *Per Curiam* de 15 de mayo de 1973, tomo y página antes citados, anulamos la Resolución de la Comisión de Servicio Público y devolvimos el caso a dicho organismo "a fin de que sus miembros, una vez preparada, lean la transcripción de los testimonios orales recibidos, debiendo además concederse una nueva oportunidad a las partes para que presenten informes escritos u orales para ser oídos o leídos por la Comisión en pleno, efectuado lo cual procederá ésta a adoptar el acuerdo que corresponda."

Posteriormente, en 16 de enero de 1974, en *A.D.C.V.P.* v. *Tribunal Superior,* 101 D.P.R. 875, en reconsideración, dejamos sin efecto nuestra sentencia antes citada de 15 de mayo de 1973, anulamos el *certiorari* expedido y devolvimos el caso al tribunal de instancia para la continuación de procedimientos consistentes con lo que en reconsideración fallamos.

En nuestra sentencia en reconsideración, señalamos que la Comisión se había abstenido de señalar si la parte del récord que faltaba por considerar demostraría que los recurrentes habían tenido una vista ajustada al requisito del

debido procedimiento de ley. Allí expresamos: "La posición del Estado en este incidente vital fue reticente y doctrinaria, reservando hechos que de conocerse hubiesen puesto en contienda la alegación de irregularidad insalvable en los procedimientos, y que hubiesen provisto al juez de instancia de mayor fundamento que la incierta probabilidad de que al completarse el récord surgieran a la luz los detalles factuales que podían insuflar vida de legalidad al hostigado proceso. Como resultado de esta preterición de la realidad procesal, cuando tomamos el caso para decidir este Tribunal se enfrentó a un cuadro de proceso administrativo dislocado: los Comisionados de Servicio Público no habían estado presentes en las vistas orales ni tampoco habían leído el récord taquigráfico pues éste no se había transcrito; los examinadores no habían preparado conclusiones ni rendido informe; y no aparecía medio ni método racional alguno por el cual llegó a los comisionados conocimiento de los hechos objeto de adjudicación en la resolución y orden adoptadas disponiendo la eliminación de las casas de los recurrentes. No es hasta la solicitud de reconsideración que la recurrida Comisión de Servicio Público finalmente saca del recinto secreto la verdad factual con que mucho antes debió enfrentar la ofensiva de los recurrentes y ofrece a este Tribunal, avalada por el juramento de los miembros integrantes de la Comisión de Servicio Público que intervinieron en el proceso decisional y adjudicativo Sres. Godofredo N. Gaetán, Presidente, y Andrés E. Salas Soler y Rafael Rivera Lugo, Comisionados Asociados; y los examinadores que actuaron en las audiencias Sres. Sigfredo A. Irizarry y José A. Anglada Segarra, una extensa relación . . . ."

Mediante su sentencia de 22 de septiembre de 1975 el Tribunal Superior confirmó la resolución y orden dictada por la Comisión de Servicio Público el 13 de noviembre de 1970. Recurrieron ante nos los querellados, aquí recurrentes, y nos hacen los siguientes planteamientos en apoyo de su pe-

tición de *certiorari*: (1) que las agencias administrativas no tienen poderes para privar a los ciudadanos de sus derechos dominicales; (2) que dicha facultad solo la tiene el Poder Judicial; (3) que la Comisión de Servicio Público no tiene en ley poderes coercitivos; (4) que tampoco tiene poderes delegados para conceder o privar del dominio o aprovechamiento de terrenos públicos; (5) que los terrenos aquí envueltos son manglares y marismas, bienes patrimoniales del Estado sujetos a derechos posesorios por particulares; (6) que la orden de la Comisión es drástica, injusta, irrazonable y arbitraria; (7) que los peticionarios son edificantes de buena fe; (8) que los manglares y marismas aquí afectados no son aguas navegables, que no han sido ni son utilizados para el flujo del comercio interestatal y que por lo tanto no están sujetos a control federal; (9) que la Comisión de Servicio Público no tiene poderes delegados para entrar en cuestiones ambientales ya que no existe en la ley nada que le confiera tales poderes; (10) que los peticionarios que allí poseen terrenos del Estado bajo contrato de arrendamiento o bajo acuerdos con las agencias pertinentes del Estado, son propietarios y edificantes de buena fe; (11) que es inconstitucional la acción de la Comisión de Servicio Público pues ésta ha actuado a la vez como fiscal, juez y parte; (12) que la Comisión de Servicio Público no tiene facultad para ordenar a los empleados de otras agencias o departamentos del gobierno la ejecución de sus órdenes en forma coercitiva, en un caso como el presente, sin antes solicitar la intervención judicial; (13) que la Comisión de Servicio Público no tiene facultades delegadas por el Gobierno federal mediante el *Rivers and Harbors Appropriation Act* ni por la *General Bridges Act* para autorizar o denegar la construcción de las casas aquí envueltas; (14) que las agencias administrativas tienen que acudir al foro judicial para desposeer a particulares de derechos dominicales; y (15) que dicho foro es el adecuado para determinar la

legalidad de la construcción de las casas aquí concernidas y de la orden de la Comisión ya que no es lo mismo conceder o negar un permiso para construir que privar permanentemente de lo ya construido y poseído por un gran número de años. Argumentan que en esta situación debe ser el poder judicial el que finalmente resuelva.

Vamos a dirigirnos al problema de la jurisdicción pues una vez discutido éste no tendremos que entrar en los demás planteamientos hechos por los recurrentes.

La Resolución de la Comisión de Servicio Público que aquí se cuestiona se emitió en 13 de noviembre de 1970, bajo la vigente Ley de Servicio Público de Puerto Rico, Ley Núm. 109 de 28 de junio de 1962, según enmendada, 27 L.P.R.A. sec. 1001 y ss. A dicho estatuto, según leía a dicha fecha, tenemos que recurrir, pues, en primer lugar para investigar las facultades de la Comisión cuando tomó la acción que nos ocupa. Dichas facultades, en síntesis, comprenden las siguientes: otorgar autorizaciones de carácter público o cuasi público, incluyendo el derecho de usar o cruzar las vías públicas o cauces de aguas públicas; reglamentar las compañías de servicio público y porteadores por contrato; hacer cumplir las disposiciones de la Ley de Aguas; y ejercer los poderes que le sean delegados por el Gobierno de los Estados Unidos o por cualquiera de sus departamentos, dependencias o funcionarios. Art. 14 de la Ley de Servicio Público, 27 L.P.R.A. sec. 1101.

Como se ha visto la Ley de Servicio Público en su Art. 14, al establecer cuáles son los poderes de la Comisión, remite al lector a la Ley de Aguas y faculta a la Comisión para hacer cumplir sus disposiciones. La Ley de Aguas, una cuidadosa y bien redactada pieza legislativa que nos viene de nuestro derecho civil español, y que comienza en su artículo primero disponiendo que pertenecen al dueño de un predio las aguas pluviales que caen en el mismo, trata del dominio de las aguas terrestres y de su aprovechamiento; de las aguas subterrá-

neas; de los cauces de los ríos; de las accesiones, arrastres y sedimento de las aguas;(¹) de las lagunas y pantanos; de las servidumbres naturales y legales en materia de aguas; del aprovechamiento de las aguas públicas; de las comunidades de regantes; y de la competencia de los tribunales en materia de aguas. Al tratar de aprovechamientos comunes de las aguas públicas la Ley, Art. 126 y ss., 12 L.P.R.A. sec. 801 y ss., dispone que "Mientras las aguas corran por sus cauces naturales y públicos, todos podrán usar de ellas para beber, lavar ropas, vasijas y cualesquiera otros objetos, bañarse y abrevar o bañar caballerías o ganado, con sujeción a los reglamentos y leyes de policía y sanidad y otros reglamentos y leyes vigentes."

Sobre la policía de las aguas la Ley dispone que la policía de las aguas públicas y sus cauces naturales, riberas y zonas de servidumbre estará a cargo de la administración (lo que equivale a decir del gobierno), dictando ésta las disposiciones necesarias para el buen orden en su uso y aprovechamiento. (²)

■ Faculta el citado Art. 126 de la Ley de Aguas a la Comisión de Servicio Público para autorizar la toma de agua de cauces públicos, por medio de tuberías, para usos domésticos o de vaquerías. A tales fines la Comisión deberá celebrar una vista pública, especificar los litros por segundo en que consistirá la concesión e impondrá las condiciones necesarias para proteger los intereses públicos y los de otros concesionarios. En resumen, dicha Ley de Aguas no regula las aguas marítimas. Regula las aguas pluviales, los ríos, los arroyos y las aguas subterráneas.

---

(¹) *Vachier* v. *McCormick, Alcaide & Co.*, 86 D.P.R. 714 y 735(1962).

(²) Mediante la ley orgánica del Departamento de Recursos Naturales, Ley Núm. 123 de 20 junio 1972, Art. 6 (3 L.P.R.A. sec. 156(d)), los poderes de la Comisión de Servicio Público relacionados con la concesión de franquicias para el uso de las aguas públicas; el cumplimiento de la Ley de Aguas y la policía de las aguas fueron transferidos al Departamento de Recursos Naturales.

■ Pero la Comisión entiende que tiene otra base juris-diccional distinta para sostener su acción cuasi judicial y ejecutiva en este caso. Alude a la facultad antes mencionada que le confirió la citada Ley de Servicio Público de 1962, en su Art. 14, en el sentido de que se le facultó para ejercitar los poderes que le fueron delegados por el Gobierno de los Estados Unidos o por cualquier departamento u oficina de éste. 27 L.P.R.A. sec. 1101 *in fine*. Sin embargo, no se nos ha mostrado, ni la hemos encontrado, disposición de ley u orden ejecutiva alguna delegando en la Comisión poderes del Secretario de la Guerra de los Estados Unidos sobre aguas marítimas. El *Rivers and Harbors Appropriation Act*, 33 U.S.C. sec. 401 y ss., ley que autoriza la concesión de permisos para la construcción de puentes, presas, muros y calzadas en los puertos, canales, ríos y otras aguas navegables de los Estados Unidos, no contiene disposición alguna que autorice al Secretario de la Guerra de los Estados Unidos a delegar ese poder en la Comisión de Servicio Público de Puerto Rico. Dispone la Sec. 9 de esa ley, 33 U.S.C. sec. 401, que a esos fines se necesitará el consentimiento del Congreso de los Estados Unidos o de la Asamblea Legislativa de los Estados y del Secretario del Ejército. No provee para delegación de dichas facultades. El Secretario del Ejército no tiene poder para ordenar la destrucción de estructuras construidas sin su autorización. Para lograr dicha destrucción o remoción de las mismas debe acudir a los tribunales a través del Attorney General de los Estados Unidos, 33 U.S.C. sec. 406. Mal puede el Secretario del Ejército delegar una facultad que no tiene.

La Ley de Muelles y Puertos de Puerto Rico de 1968, Ley Núm. 151 de 28 de junio de ese año, 23 L.P.R.A. sec. 2101 y ss., confiere en su Art. 6 (23 L.P.R.A. sec. 2604) a la Autoridad de Puertos la facultad de autorizar la construcción de estructuras en la zona marítima terrestre incluida en una zona portuaria y dispone que dicha autorización no

será necesaria para la construcción de las obras a que se refiere la Sec. 9 de la *Rivers and Harbors Appropriation Act.* Dispone además que los permisos para la construcción de esas obras en aguas navegables—las obras a que se refiere la Sec. 9 de la *Rivers and Harbors Appropriation Act*—los dará la Comisión de Servicio Público con arreglo a las disposiciones de las leyes federales. Pero como hemos señalado, dicha Sec. 9 se refiere a puentes, presas, muros y calzadas (*any bridge, dam, dike, or causeway*) y no incluye el tipo de estructura envuelta en este caso.

Las casas aquí concernidas no son la clase de estructura que bajo la citada sección de la Ley de Muelles y Puertos requieren el permiso de la Comisión de Servicio Público, pues no son puentes, presas, muros ni calzadas. La evidencia demuestra que estas casas están enclavadas en tierra, aunque un lado de ellas da hacia tierra y el otro hacia el mar. Las casas están en la orilla; no son casas botes, y no son flotantes. Sus pilotes enclavan en la tierra. Las leyes federales no cubren estructuras construidas sobre tierra sino estructuras sobre aguas navegables. Y ésta es la segunda limitación de la Sec. 9 de la *Rivers and Harbors Appropriation Act:* que trata de aguas navegables. En el caso de autos las casas están construidas con sus pilotes enclavados en la tierra y parte de ellas sobre aguas llanas que no son lo que normalmente se considera aguas navegables. Desde luego, una yola sin quilla puede flotar sobre un pie de agua pero un pie de agua no es considerado agua navegable. En la aplicación de la ley la razonabilidad y el sentido común son elementos necesarios.

El Tribunal Supremo de los Estados Unidos le denegó a un Presidente de los Estados Unidos la facultad de tomar y operar temporeramente unos molinos de acero por la razón de que no había facultad expresa mediante ley que autorizase al Presidente a tomar y operar temporeramente esas instalaciones. *Youngstown Sheet & Tube Co. et al.* v.

*Sawyer*, 343 U.S. 579, 585 (1952). Mucho menos puede permitirse, no ya la toma temporera sino la destrucción permanente de 121 casas, sin facultad de ley que autorice a la Comisión para ello. No es la Comisión de Servicio Público sino el Secretario de Transportación y Obras Públicas quien está facultado para hacer concesiones de permisos en la zona marítima terrestre de Puerto Rico no incluida en una zona portuaria, como es la zona del caso de autos. 23 L.P.R.A. sec. 2110(d). En las zonas portuarias esos poderes se ejercen por la Autoridad de los Puertos. 23 L.P.R.A. secs. 2604 y 2606. Si alguna persona usurpase terrenos baldíos o no concedidos, pertenecientes a Puerto Rico, el Gobierno de Puerto Rico podría adoptar las medidas necesarias para su expulsión. 1 L.P.R.A. sec. 6. No podrá adquirirse títulos a terrenos baldíos estaduales por posesión adversa. *Ibid.*

Mediante la Resolución de la Cámara de Representantes Núm. 86 de 31 de mayo de 1961, dicho cuerpo legislativo recomendó: (1) que el gobierno tome las medidas para *detener* (no para remover ni destruir) las construcciones clandestinas en la bahía de La Parguera; (2) que se estudie la posibilidad y el costo de la construcción de un sistema de disposición de aguas negras para La Parguera; y (3) que en los planes de desarrollo de La Parguera se dé consideración, entre otras cosas, a la lotificación de los terrenos a orillas de la bahía de La Parguera "para permitir y *fomentar* la construcción de casas botes, siempre que éstas tengan las debidas instalaciones para la disposición de sus aguas negras." (Bastardillas nuestras.)

El Secretario de Transportación y Obras Públicas está facultado, previo el trámite correspondiente, para arrendar o vender terrenos del Estado. Ley Núm. 12 de 10 de diciembre de 1975, enmendada por la Ley Núm. 63 de 27 de mayo de 1976. Algunos de los peticionarios tienen contratos de arrendamiento de sus solares. Es posible que un estudio de la situación que este caso plantea permita al Secretario de

Transportación y Obras Públicas arrendar a largo plazo o vender los solares a los ocupantes de los mismos, sujeto a que se eliminen los factores nocivos al ambiente creados principalmente por las aguas negras.

No habiéndose demostrado la facultad y jurisdicción de la Comisión de Servicio Público para ordenar la remoción o la destrucción de las 121 casas aquí envueltas, jurisdicción que no podemos presumir, *Peter Fox Brewing Co.* v. *Sohio Petroleum* Co., 189 F.Supp. 743; *California* v. *Federal Power Commission*, 369 U.S. 482; *Arrow Transp. Co.* v. *Idaho Public Utilities Commission*, 379 P.2d 422; *Chicago, R.I. & P.R. Co.* v. *Iowa State Commerce Commission*, 80 N.W.2d 351; *Black River Elect. Co-op, Inc.* v. *Public Service Commission*, 120 S.E.2d 6; *Northern Pac. Ry. Co.* v. *Baker, D.C. Wash.*, 3 F.Supp. 1; *City of Pittsburgh* v. *Pennsylvania Public Utility Commission*, 43 A.2d 348; *Felix* v. *Pennsylvania Public Utility Commission*, 146 A.2d 347; *State* v. *Atlantic Coast Line R. Co.*, 47 So. 969; *City of New York* v. *Interborough Rapid Transit Co.*, 249 N.Y.S. 243, y siendo de opinión, como somos, de que la Comisión actuó sin jurisdicción, *se revocará la sentencia recurrida y se dejará sin efecto la resolución y orden de la Comisión de Servicio Público recaída en este caso.*

El Juez Asociado Señor Torres Rigual no intervino.