# 2006 DTA 104

## TRIBUNAL DE APELACIONES
## REGIÓN JUDICIAL DE SAN JUAN
## PANEL III

EDGARDO CORREA MUÑIZ
Querellante-Recurrente

v.

PLAZA ATHENEEE, S.E., EMPRESAS SIMO,
JUNTA DE DIRECTORES CONDOMINIO PLAZA ATHENEEE
Querellada-Recurrida

Núm. KLRA-05-00284

San Juan, Puerto Rico, a 11 de agosto de 2006

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y Vivoni del Valle

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurrente, Edgardo Correa Muñiz, nos solicita que revoquemos la resolución emitida el 4 de marzo de 2005 por el Departamento de Asuntos del Consumidor. Mediante la misma, dicho organismo administrativo desestimó la querella incoada por el recurrente y ordenó el cierre y archivo del caso.

Por los fundamentos que expondremos, se confirma la resolución recurrida.

### I

El 25 de abril de 2001, el señor Edgardo Correa Muñiz (en adelante, Sr. Correa o recurrente), adquirió el apartamento 803 del Condominio Plaza Athenee en Guaynabo (en adelante, el Condominio). A dicho apartamento se le asignaron dos espacios de estacionamiento, uno de ellos bajo techo y el otro al aire libre. El estacionamiento bajo techo medía 7 pies 10 pulgadas de ancho.

El 19 de septiembre de 2002, el recurrente presentó una querella ante el DACO. Planteó que el estacionamiento bajo techo era más pequeño en comparación con los demás estacionamientos del Condominio que medían 8 pies 3 pulgadas de ancho. Alegó que le reclamó a Empresas SIMO, SE (en adelante, el desarrollador) y que los remedios propuestos no habían corregido la dificultad para estacionarse.

Luego de presentada la querella, el desarrollador demolió parcialmente parte de la pared del lado este del estacionamiento en controversia. Abrió un hueco de 2 pies 6 pulgadas en su extremo exterior y de 5 pies 2 pulgadas en la porción intermedia de la pared. Ello, para facilitar al Sr. Correa la utilización del estacionamiento en controversia.

Así las cosas, DACO llevó a cabo una inspección en el estacionamiento del recurrente. Una vez realizada la misma, el inspector preparó un Informe Técnico con los hallazgos, el cual fue notificado a todas las partes.

330

Agotados los remedios procesales, DACO celebró la vista adjudicativa. Luego de analizar la prueba, dicho foro emitió resolución. Mediante la misma, desestimó la querella y ordenó el cierre y archivo del caso. Concluyó que la prueba desfilada demostraba que la Junta de Directores del Condominio Plaza Athenee (en adelante, la Junta) había atendido adecuadamente el asunto en controversia salvaguardando el principio de que el propósito del régimen de propiedad horizontal es propiciar el disfrute de la propiedad privada sobre el apartamento, siempre que no se menoscabe el disfrute de los demás titulares.

El Sr. Correa solicitó reconsideración, la cual el DACO rechazó de plano.

Inconforme, oportunamente el Sr. Correa recurrió ante nos, señalando que:

*"Erró el DACO al no concluir que el hecho de que Plaza Athenee S.E. no le informara al querellante que el Apartamento adquirido por éste contaba con un estacionamiento compacto, viciaba el consentimiento de éste al adquirir el mencionado Apartamento.*

*Erró el DACO al determinar que la demolición parcial por parte de Plaza Athenee, S.E., de 2'6" de una pared en el extremo exterior y 5'2"de la porción intermedia de ésta, la cual es un elemento común, sin el consentimiento unánime de los titulares corresponde a una actuación lícita por parte de Plaza Athenee, S.E.*

*Erró el DACO al realizar Determinaciones de Hechos y Conclusiones de Derecho sobre prueba no desfilada en la Vista Administrativa y sobre cuya prueba el querellante no ha tenido la oportunidad de contra interrogar a testigos ni a las personas que confeccionaron dicha prueba."*

La Junta presentó *Alegato de Oposición a la Petición de Revisión*. Con el beneficio de los alegatos de ambas partes, pasamos a resolver.

## II

En el primer señalamiento, el Sr. Correa plantea que erró el DACO al no concluir que su consentimiento estuvo viciado porque el mismo fue prestado mediante dolo. Arguye que al momento de prestar el consentimiento no se le informó que uno de los estacionamientos asignados al apartamento que adquirió era más pequeño que los demás estacionamientos del Condominio.

Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Artículo 1206 del Código Civil, 31 L.P.R.A. sec. 3371; *Amador Parrilla v. Concilio Iglesia Universal*, 150 D.P.R. 571, 581 (2000). Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato, y (c) causa de la obligación que se establezca. Artículo 1213 del Código Civil, 31 L.P.R.A. sec. 3391; *Díaz Ayala et al. v. E.L.A.*, 153 D.P.R. 675, 690-691 (2001). Una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios. Artículo 1230 del Código Civil, 31 L.P.R.A. sec. 3451. El consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Artículo 1214 del Código Civil, 31 L.P.R.A. sec. 3401; *Prods. Tommy Muñiz v. COPAN*, 113 D.P.R. 517, 521 (1982).

Los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 L.P.R.A. sec. 3375; *S.L.G. Irizarry v. S.L.G. García*, 155 D.P.R. 713,725. Los contratos son negocios jurídicos bilaterales que constituyen una de las fuentes de las obligaciones. *Amador Parrilla v. Concilio Iglesia Universal*, *supra*, a la pág. 581. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Artículo 1207 del Código Civil, 31 L.P.R.A. sec. 3372; *S.L.G. Irizarry v. S.L.G. García*, *supra*, a la pág. 724; *Trinidad v. Chade*, 153 D.P.R.

280, 289; *Luán Invest. Corp. v. Rexach Const. Co.*, 152 D.P.R. 652, 659 (2000); *Amador Parrilla v. Concilio Iglesia Universal, supra,* a la pág. 582. Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos. Artículo 1044 del Código Civil, 31 L.P.R.A. sec. 2994.

Será nulo el consentimiento que haya sido prestado por error, violencia, intimidación o dolo. Art. 1217 del Código Civil, 31 L.P.R.A. sec. 3404. Sobre la figura del dolo, el Art. 1221 del Código Civil, 31 L.P.R.A. sec. 3408, establece que: *"[h]ay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho".* Al respecto, señala el reputado comentarista Puig Brutau que el dolo vicia la voluntad de uno de los contratantes hasta el extremo de verse inducido a otorgar un contrato por el error que maliciosamente ha provocado la otra parte. Puig Brutau, *Fundamentos de Derecho Civil, Doctrina General del Contrato,* 3ra. ed., Barcelona, Bosch, Casa Editorial, S.A., T. II, Vol. 1, pág. 92, (1988).

Existen dos clases de dolo, ambos con características y circunstancias diferentes. El grave o causante lleva, motiva y sirve de ocasión para celebrar un contrato de modo tal que sin éste no se hubiese completado el mismo. *Colón v. Promo Motor Imports, Inc.,* 144 D.P.R. 659, 667 (1997), citando a Scaevola, *Código Civil Comentado,* 2nda ed., Madrid, Ed. Reus, Tomo XX, pág. 709 (1958). Es esta clase el que determina el consentimiento. A su vez, produce la nulidad de los contratos cuando ha sido empleado por una de las partes contratantes. Art. 1222 del Código Civil, 31 L.P.R.A. sec. 3409.

El otro, conocido por incidental, es aquél que no tiene una influencia decisiva en la esencia de la obligación. Sólo facilita la celebración del contrato. Contrario al dolo causante, el perjudicado tiene voluntad de contratar aun sin éste, pero hay engaño en la forma en que se celebra el contrato. *Colón v. Promo Motor Imports, Inc., supra,* a la pág. 667 citando a Manuel Albaladejo, *Comentarios al Código Civil y Compilaciones Forales,* Tomo XVII, Vol. 1-B, pág. 588 (1993). Por consiguiente, cualquier engaño a dichas condiciones no invalida por sí sólo el consentimiento en la totalidad de la obligación, sino en algún extremo o particularidad de la misma. El dolo incidental compele al que lo empleó a indemnizar los daños y perjuicios causados a la parte contratante afectada. *Cruz v. Autoridad de Fuentes Fluviales,* 76 D.P.R. 312, 318 (1954).

Aun cuando en la situación objeto de análisis se configurare la existencia de dolo grave o incidental, nuestra normativa establece que el mismo no se presume. *Colón Rivera v. Promo Motors Imports, Inc., supra,* a la pág. 669. Por consiguiente, le corresponde a quien reclama dicha conducta la responsabilidad de la prueba para establecerla. *Canales v. Pan American, supra,* a la pág. 340. El dolo debe ser justificado con preponderante evidencia que no sean meras conjeturas suficientes para probar su existencia. Pero ello no significa necesariamente que tenga que probarse directamente, pudiendo establecerse el mismo mediante inferencia o por evidencia circunstancial. *Márquez v. Torres Campos,* 111 D.P.R. 854, 863 esc. 19.

Contrario a lo que se plantea, en el caso ante nuestra consideración no hubo dolo incidental que viciara el consentimiento que prestó el Sr. Correa al momento de adquirir su apartamento. No existe evidencia en los autos que demuestre que el desarrollador le ofreció al recurrente un estacionamiento con una cabida específica. La escritura de compraventa lo que dispone respecto a los estacionamientos asignados es lo siguiente:

*"A esta unidad se le ha asignado el uso exclusivo de dos (2) espacios(s) de estacionamiento(s), uno (1) de ellos bajo techo, y un (1) espacio de almacenamiento, marcados con el número ochocientos tres los cuales son elementos comunes limitados."* ■

Los planos sometidos por el Sr. Correa tampoco indican la medida de los estacionamientos asignados.

El Reglamento de Zonificación, *Reglamento Número 4 de la Junta de Planificación,* establece en su sección

74.02 que los estacionamientos pueden variar en su ancho hasta un mínimo de 7 pies 3 pulgadas, siempre que estos estacionamientos no sobrepasen en número a la tercera parte del número de estacionamientos requeridos. [2]

De la prueba que obra en autos surge que menos de una tercera parte de los estacionamientos del Condominio tienen un ancho de 7 pies 3 pulgadas. ■ El estacionamiento asignado al Sr. Correa tiene un ancho de 7 pies 10 pulgadas. El mismo cumple con las medidas requeridas por el referido reglamento. Por lo que, ante el hecho de que el desarrollador no le ofreció al Sr. Correa un estacionamiento con una cabida específica, éste sólo venía obligado a entregar un estacionamiento que cumpliera con lo requerido por el Reglamento de Zonificación, *supra*. No se cometió el error señalado.

### III

Como segundo señalamiento, el Sr. Correa le imputa al DACO haber errado al determinar que fue lícita la demolición parcial de la pared ubicada del lado este de su estacionamiento. Alega que la pared es un elemento común y que se necesitaba el consentimiento unánime de los titulares para llevar a cabo la referida demolición.

El Art. 11 de la Ley de Condominios, 31 L.P.R.A. sec. 1291i, establece que los elementos comunes del inmueble son los siguientes:

*"a) Se considerarán elementos comunes generales necesarios, no susceptibles de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa los siguientes:*

*1) El vuelo, entendido éste como el derecho a sobre elevar. Excepto lo dispuesto en el Artículo 14-A, el cierre o techado de patios, terrazas o áreas abiertas, así como la construcción de nuevos pisos sobre el techo y sobre o debajo del terreno requerirá, siempre que tales obras no estén contempladas en los planos sometidos con la escritura de constitución del régimen, el consentimiento unánime de los titulares.*

*2) Los cimientos, paredes maestras y de carga, techos, galerías, escaleras y vías de entrada y salida o comunicación.*

*3) Los locales para instalaciones de servicios centrales, como electricidad, luz, gas, agua fría y caliente, refrigeración, cisternas, tanques y bombas de agua, y demás similares que sean indispensables para el adecuado disfrute de los apartamientos, salvaguardando que estos elementos no se ubiquen dentro de los apartamientos o locales privados.*

*4) Los ascensores, cuando éstos sean necesarios para el adecuado disfrute de los apartamientos.*

*5) Las áreas verdes y los árboles requeridos por las instrumentalidades o dependencias del Estado Libre Asociado de Puerto Rico.*

*6) Cualquier otro elemento que fuere indispensable para el adecuado disfrute de los apartamientos en el inmueble.*

*Cualquier pacto que transfiera la titularidad, posesión o control de estos elementos o otra persona natural o jurídica distinta del Consejo de Titulares será nulo.*

*b) Se consideran elementos comunes generales, salvo disposición o estipulación en contrario, los siguientes:*

*1) El terreno, los sótanos, azoteas, patios y jardines.*

*2) Los locales destinados al alojamiento de porteros o encargados.*

*3) Las áreas destinadas a estacionamiento.*

*4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes. (Énfasis Nuestro) [...]".*

La referida ley también establece cómo se deben llevar a cabo los acuerdos para la conservación y uso de elementos comunes al disponer en su Artículo 16 que:

*"Las obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares. Si las de uso eficaz menoscabasen el disfrute de algún titular en particular, éstas no podrán realizarse sin el consentimiento del titular afectado.*

***Para toda obra que afecte los elementos comunes del inmueble, [se] requerirá el consentimiento unánime de los titulares."*** (Énfasis Nuestro) 31 L.P.R.A. § 1291n.

Con relación al citado Artículo 16, establece el profesor Godreau que se requerirá el voto unánime de los titulares cuando las obras a realizarse afectan los elementos comunes. Por afectar debe entenderse aquello que menoscaba, amenaza o disminuye la efectividad o valor de un elemento común. **Serían obras que afecten, aquellas que sin duda comprometan la eficacia, seguridad o solidez del edificio.** Si una obra no afecta adversamente el edificio, entonces se trata de una obra de conservación necesaria, de obras que redundan en un uso más eficaz de las áreas comunes o de una mejora. (Énfasis Nuestro). M. Godreau, M. Godreau, *El Condominio y el Régimen de Propiedad Horizontal en Puerto Rico*, San Juan, Ed. Dictum, 1992, pág. 128; *Asociación de Condómines Quadrangle Medical Center v. Ramírez Lizardi*, 154 D.P.R. 699, 709 (2001).

En el caso de marras, la Junta, en un intento de solucionarle al Sr. Correa el problema de incomodidad para estacionarse, demolió parcialmente parte de la pared del lado este del estacionamiento en controversia. Contrario a lo que alega el recurrente, para realizar esta obra de mejora no era necesario el consentimiento unánime de los titulares del Condominio, pues la misma no afecta ningún elemento común del inmueble. ■ Esta tampoco afecta a ningún titular en particular. Por el contrario, beneficia al Sr. Correa, ya que la mejora le permite realizar, sin dificultad extraordinaria, las maniobras necesarias para entrar y salir de su estacionamiento. También le permite abrir las puertas del pasajero y del conductor cuando el automóvil se estaciona de frente y en retroceso. ■

Anteriormente establecimos que para realizar una obra necesaria para el uso eficaz de los elementos comunes es obligatorio obtener el consentimiento de la mayoría de los titulares. En el caso de autos no se obtuvo dicho consentimiento. Por lo que la demolición de la pared puede ser impugnada por cualquiera de los titulares. Sin embargo, ese hecho no cambia el resultado de este caso. Pues en la eventualidad de que algún titular solicitase que se restituya la pared a su estado original, la Junta sigue cumpliendo con el Reglamento de Zonificación, *supra*, al entregarle al recurrente un estacionamiento que cumple con las medidas establecidas en el mismo. No se cometió el error señalado.

## IV

Por último, el Sr. Correa aduce que incidió el DACO al tomar en consideración prueba no desfilada en la vista adjudicativa para realizar las determinaciones de hechos y conclusiones de derecho.

La cláusula del debido proceso de ley, Artículo II, Sección 11 de nuestra Constitución, abarca dos dimensiones, a saber, la sustantiva y la procesal. *Hernández González v. Izquierdo Encarnación*, 164 D.P.R. ____ (2005), **2005 J.T.S. 44**; *Marcano Rivera v. Departamento de Estado*, 163 D.P.R. ___, **2005 J.T.S. 16**. En su vertiente sustantiva, los tribunales examinan la validez de las leyes a la luz de las disposiciones constitucionales, para asegurar que las leyes y acciones gubernamentales no menoscaben arbitrariamente los

derechos de los ciudadanos. Por otro lado, la vertiente procesal garantiza que existan unas garantías mínimas que el Estado debe proveerle a toda persona en aquellos procedimientos en los cuales se vean afectadas su propiedad o libertad. *Rivera v. Secretario de Hacienda*, 119 D.P.R. 265, 273 (1987).

Cuando un individuo demuestra que se han visto perturbados sus intereses de libertad o propiedad por una actuación gubernamental, se activan las protecciones del debido proceso de ley. *Marcano Rivera v. Departamento de Estado, supra*; *Rivera v. Secretario de Hacienda, supra*, a las págs. 273-274. Estas protecciones garantizan que se brinde: (1) derecho a una notificación adecuada del proceso, (2) un proceso ante un juzgador imparcial, (3) la oportunidad de ser oído y presentar prueba a su favor, (4) tener asistencia de abogado, (5) que la decisión final esté basada en la evidencia presentada y admitida que se haga formar parte del expediente, y (6) el derecho a contrainterrogar testigos y examinar la prueba presentada en su contra. *Marcano Rivera v. Departamento de Estado, supra*; *Hernández González v. Izquierdo Encarnación, supra*; *Almonte v. Brito*, 156 D.P.R. ___ (2002), **2002 J.T.S. 43**. Es menester señalar que el proceso debe ser justo, pero no implica que es rígido e inflexible, sino que se ajusta a las exigencias constitucionales de cada contexto y por esto ha sido catalogado como *"circunstancial"*. *Hernández González v. Izquierdo Encarnación, supra;* *Marcano Rivera v. Departamento de Estado, supra*.

En particular, ha sido reconocido que en el contexto administrativo, las normas del debido proceso de ley no se aplican con la misma rigurosidad que se aplican dentro de la adjudicación judicial. *Almonte v. Brito, supra*. Claro está, ello no implica dejadez en su cumplimiento, sino la exigencia de un análisis caso a caso, velando por las garantías constitucionales dentro de un proceso que se caracteriza por su agilidad, rapidez e informalidad.

De conformidad con lo anterior, toda la prueba que la agencia utilice para tomar su decisión debe haberse presentado en la vista y haberse hecho formar parte del expediente administrativo. *López y otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 115 (1996). Dispone LPAU que el expediente administrativo debe contener toda la documentación que surja durante el proceso administrativo, incluyendo la prueba presentada en las vistas. 3 L.P.R.A. sec. 2168. Toda decisión de una agencia administrativa debe estar fundada en dicho expediente y el funcionario responsable de emitir la decisión tiene que hacerlo de manera verdaderamente informada. *Id.*, *Asoc. D.C.V.P. v. Tribunal Superior I*, 101 D.P.R. 416, 422-423 (1973).

Además, la agencia no puede tomar una decisión basándose en información que no ha sido puesta a disposición de las demás partes, ya que como corolario del debido proceso de ley, éstas tienen el derecho a conocer y confrontar toda evidencia, además de presentar prueba a su favor. *López y otros v. Asoc. de Taxis de Cayey, supra*, a las págs. 115-116.

La prueba que desfiló ante DACO, durante la vista adjudicativa, estuvo compuesta de los testimonios del arquitecto Segundo Cardona Colón, perito del desarrollador, la señora Frances Menéndez Vega, la señora Estrella Muzaurieta, administradora del Condominio y el arquitecto Fernando Battle León, presidente de la Junta de Directores del Condominio. Forma parte del expediente administrativo el informe pericial que preparó el Arq. Cardona Colón.

Luego de celebrada la vista ante DACO, la Junta presentó una *Moción Informativa y Para Solicitar Desestimación*. La misma contenía un informe del Arq. Battle León. Dicho informe fue considerado por el foro administrativo para realizar sus determinaciones de hechos y conclusiones de derecho, a pesar de que el aquí recurrente no había tenido oportunidad de refutarlo.

Este hecho en nada afecta la determinación final del presente caso, ya que el referido informe constituye prueba acumulativa. El informe pericial del Arq. Cardona Colón demuestra fehacientemente que el estacionamiento que le fue asignado al Sr. Correa cumple con lo dispuesto en el Reglamento de Zonificación,

*supra,* y que la demolición de la pared del lado este del estacionamiento constituyó un remedio adecuado para el problema que le aquejaba al recurrente. No se cometió el error señalado.

## V

Por los fundamentos que anteceden, se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

**ESCOLIOS 2006 DTA 104**

**1.** Véase pág. 183 del Apéndice del Recurso.

**2.** Véase pág. 89 del Apéndice del Recurso.

**3.** Véase pág. 91 del Apéndice del Recurso.

**4.** El ingeniero José A. López examinó la estructura del Condominio y determinó que la demolición parcial de la pared que colinda con el estacionamiento en controversia no constituye riesgo alguno para la seguridad o solidez del edificio. Véase pág. 65 del Apéndice del Recurso.

**5.** Véase págs. 51-52, 74, 93-97 del Apéndice del Recurso.